# JOHN REESE v. JANE CLARK.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 29, 1891—Decided January 4, 1892.
[To be reported.]

1. It is not permissible to guess at the cause of an injury, and assume that it was something for which the defendant was responsible. One who is injured while lawfully on the premises of another, cannot recover damages for the injury, if he fail to show its direct cause, or that it occurred through the negligence of defendant.

(*a*) The plaintiff, an employee in defendant's mill, while engaged in sorting a pile of bricks in front of heavy iron plates, was injured by the fall of the plates from a position in which he had himself helped to place them. He testified that he did not know the cause of the fall, and none was assigned by any witness:

2. There being no legitimate inference as to the cause of the fall, except that either the plates were insecurely placed, or their support was taken away or weakened by removal of the bricks in front of them, and plaintiff being himself responsible for both these possible causes, he was not entitled to recover for his injury.

3. Nor would proof that some time before the accident the defendant's manager said to the plaintiff, " Go ahead with your work; I will take care of the plates," justify a recovery, at least in the absence of evidence that it was possible to give plaintiff warning in advance of the fall of the plates.

4. A workman is under no obligation to continue working in a dangerous place of employment. If he does so, with every opportunity to know the danger, he cannot excuse his own want of care in failing to notice and guard against it, by alleging that his employer promised to do this, and had failed to observe his promise.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 196 October Term 1891, Sup. Ct.; court below, No. 817 September Term 1888, C. P. No. 1.

To the first Monday of September, 1888, John Reese brought trespass against Jane Clark, to recover damages for alleged negligence of the defendant causing personal injuries to the plaintiff. Issue.

Statement of Facts.

At the trial, on January 13, 1891, the following facts were shown:

The plaintiff, who was a puddler by trade, was engaged with other workmen on October 30, 1886, in tearing down and removing the remains of a rolling mill at Cleveland, Ohio, owned by the defendant, which had been substantially destroyed by fire. He had been employed by and was working under the direction of Frank L. Clark, a son of the defendant, who was described by plaintiff's witnesses as the manager of the mill. The plaintiff had been at work for about a week, in tearing out the puddling furnaces, of which there were twenty-one in the mill. The removal of nineteen of them had been completed, and on the day named, the plaintiff and the other men at work with him were engaged in dismantling the twentieth. These furnaces were constructed of heavy iron plates at the front, rear and sides, connected together by rods and bolts, with a lining of fire brick on the inside, forming the chamber of the furnace. The plaintiff had cut the rods holding together the plates on the particular furnace mentioned, and had removed all the plates except those at the rear, which had been loosed from their fastenings but were still bolted together, forming a large sheet of eighteen hundred pounds weight. This the plaintiff and another workman laid against the wall of the remaining furnace, immediately to the rear of the one on which they were at work, putting it in such a position that it was inclined toward the former and away from the latter furnace. He then went to work, by direction of Mr. Clark, at the sorting of the different kinds of brick piled on the site of the dismantled furnace.

The plaintiff testified that when he was ordered by Mr. Clark to go to work on the bricks, he suggested that it would be better to get the plates down first, to which Clark replied: " Go, do what I am telling you; and pick them brick out; I don't want that team to wait for brick; the plates is all right. I will watch them;" that the plaintiff "never thought there was no danger at all," and went to work with his back to the plates, and continued at work in that position, stooping over and sorting the bricks, for about two hours, when suddenly the plates fell over on him and crushed him; that no alarm or signal was given to warn the plaintiff of their fall; that about two minutes

Charge of Court below.

before the accident, Clark came around and told the plaintiff
to hurry up, and be sure not to mix No. 1 brick with No. 2, and
then walked away. The plaintiff was corroborated by other
witnesses. Parts of the testimony are quoted in the opinion of
the Supreme Court, infra.

Joseph McCaffrey, a fellow workman of the plaintiff, testified
in a deposition taken upon a commission : " I said just before
the accident that we might be hurt. Reese replied that Mr.
Clark was there, and if any danger he would notify us of it."
This part of the deposition was objected to by the defendant
as incompetent and irrelevant, being a declaration not made in
the presence of the party to be affected by it, and as hearsay.

By the court : Objection overruled ; exception.[4]

The plaintiff in his testimony stated that he could not tell
what made the plates fall down, and there was no evidence as
to the cause of their fall.

The defendant having offered no testimony, the court, SLA-
GLE, J., at the close of the plaintiff's case, charged the jury in
part as follows :

The action which you have been called upon to determine, is
to recover damages from Mrs. Jane Clark, for injuries sus-
tained by Mr. Reese, the plaintiff, from alleged negligence on
her part.

[The defendant has asked me to instruct you that, under all
the evidence in the case, your verdict should be for the defend-
ant. This I refuse.] [1]

[It appears that Mrs. Clark, the defendant, was, in 1886,
and prior to that time, the owner of a rolling mill or iron mill
of some sort in Cleveland, Ohio. She was not attending to it
personally, but had put in charge of it her son, Frank Clark,
who was here upon the stand. There is, therefore, no direct
negligence upon the part of Mrs. Clark ; but, if she is liable at
all, she is liable by reason of an imputed negligence growing
out of neglect of duty by Frank, who was put in charge of the
works. Under the circumstances in this case, I think there
is no question but that she was responsible for him as man-
ager.] [2] . . . .

There is no evidence, in this case, to show that this plate
was left in a dangerous condition, or to show that it would

not have stood in that position till now, if let alone; no evidence of what caused it to fall.  Therefore, I say to you, that, as far as that is concerned, there is no evidence to justify you in finding that the accident occurred through the negligence of either Mrs. Clark or Frank Clark, because it is not sufficient to show that an accident happened.  There are hundreds and thousands of accidents happening every day throughout the country, against which no precautions could have availed.  They are mere accidents, and no one is responsible for the damage occasioned by a mere accident.  Unless negligence is shown, no person is responsible.

[Therefore, it is necessary for the plaintiff, the burden of proof being on him, to show that the plate fell from some cause that ought to have been prevented by proper care on the part of Mrs. Clark, or her agent, Frank Clark.  There was no evidence in this case to show that; and I would not submit this case to you at all, if it were not for the further evidence that either at the time this plaintiff was put at the work, or immediately before the accident happened, and possibly at both times, Mr. Clark said to him, " You go ahead with this work ; I will take care of the plate," or " I will give you notice of any danger from the plate," or something of that sort.  If he said that, then we come to another question, aside from the question of whether there was any actual danger in the plate, and that is this :  If this plaintiff, for any reason, either with or without cause, feared danger from the plate, either that it would fall over, or be pushed over by the persons working around it, he had a right to say, " I don't want to work alongside of that plate, and therefore we will take it out of the way ; " and if the defendant, or her manager, Frank Clark, said, " Go ahead, I will take that risk," and then failed to give the proper notice, failed to take care of the plate, and by reason of his want of attention injury resulted to the plaintiff, then the plaintiff would be entitled to recover, provided that this risk was not such that any reasonably prudent man would have refused to work there.] [3]

If you believe, under the testimony, that Mr. Reese, in continuing to work there, was guilty of imprudence and want of proper care for himself, then he contributed to the accident, and would not be entitled to recover ; and it seems to me that

the case turns upon that question. Ought he, in proper consideration for his own safety, to have quit work at that point until the plate was removed? If so, he ought not to ask anybody to pay him for damage that was occasioned by his not doing so. But if there was nothing to show that it was so unsafe that he should not take the risk, he, or any other reasonably prudent man would be justified in continuing the work under the assurance that notice would be given him, or care taken of the plate; and then, if Mr. Clark gave him that assurance and failed to do his part of the duty, the defendant would be responsible. . . . . .

—The jury returned a verdict for the plaintiff for $5,708.33. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The refusal of defendant's point.[1]

2, 3. The parts of the charge embraced in [ ] [2] [3]

4. The admission of plaintiff's offer.[4]

*Mr. George Shiras, Jr.*, (with him *Mr. W. K. Shiras* and *Mr. C. C. Dickey*), for the appellant:

1. No contractual relation between the plaintiff and the defendant, constituting him her servant, was shown. Non constat, that F. L. Clark, who employed the plaintiff was not the lessee of the mill, or had not taken an independent contract to remove the furnaces for the defendant. The burden was on the plaintiff to show that he was the defendant's servant: Allen v. Willard, 57 Pa. 374.

2. There was no evidence of negligence on the part of either the defendant or F. L. Clark. It was not denied that the duty of a master to his servant, as defined in Ross v. Walker, 139 Pa. 42, had been performed in this instance. The test of the liability of an employer for an injury to an employee, is negligence, not danger: Ford v. Anderson, 139 Pa. 261; Melchert v. Brewing Co., 140 Pa. 448; Diehl v. Iron Co., 140 Pa. 487.

3. From the position of the plate, as described by the plaintiff and his witnesses, it could not have fallen over upon him without some intervening cause. The burden was on him to show what that intervening cause was: Phila. R. Co. v. Schertle, 97 Pa. 450; Huey v. Gahlenbeck, 121 Pa. 238; Titus v.

Opinion of the Court.

Railroad Co., 136 Pa. 618. And the declarations of the plaintiff in his own favor, referred to in the fourth specification, were not made in the presence of either the defendant or F. L. Clark, and were clearly incompetent.

*Mr. L. P. Stone*, for the appellee :

The plaintiff went to work, relying upon the assurance of F. L. Clark that he would watch the plate and give warning if it were likely to fall. It was F. L. Clark's duty, as agent of the defendant, to know how the plate stood, and how it was supported from the time he commanded the plaintiff to leave the plate and go to work at the bricks. If he did not have such knowledge, or if, having it, he failed to notify the plaintiff, he was guilty of negligence. The acts of negligence which sustain this action are : (*a*) Compelling plaintiff to work in a place recognized by defendant's agent as dangerous : Patterson v. Railroad Co., 76 Pa. 389 ; Brownfield v. Hughes, 128 Pa. 197 ; and (*b*) neglecting to watch and give notice that the plate was likely to fall, as he had assured plaintiff he would do : Shear. & Redf. on Negl., § 233 ; Patterson v. Railroad Co., 76 Pa. 389. Negligence is a failure of duty, according to the circumstances : Reeves v. Railroad Co., 30 Pa. 461. The testimony may not show with the utmost exactness just how the accident happened, but it does show that it was caused by the negligence complained of, and is sufficient to support the charge : Allen v. Willard, 57 Pa. 374. The conversation testified to by McCaffrey took place in the presence of Clark.

OPINION, MR. JUSTICE GREEN :

After a very careful examination of the testimony in this case, we find ourselves unable to discover any evidence of negligence on the part of the defendant. The defendant, a woman, was the owner of the mill at which the accident occurred, but lived at a distance from it and was not present at the time of the accident, and had no direct connection with the work that was being done when it occurred. She was represented by her son, Frank Clark, who had charge of the work. The plaintiff's injury was occasioned by some heavy iron plates falling upon him while he was gathering and separating bricks in front of the plates. No one testified as to how the plates fell,

or what was the cause of their falling. The plaintiff testified that he and another workman had placed the plates in the position in which they were. He was asked:

" Q. What made this plate fall down on you? A. I couldn't tell you. Q. You knew that it was loose, didn't you? A. I knew it was loose from the other part, and I knew they were leaning against the other furnace. Q. You helped loosen it yourself, didn't you? A. Yes, sir; I done it by Mr. Clark's orders. Q. Helped loosen it by Mr. Clark's orders? A. Yes, sir; that was my work to do. Q. It was your work to loosen the plates? A. Yes, sir; then, after we leaned them back against the other furnace, he told me to go down and pick them brick up. I said we had better get them plates down first. 'No,' he says, 'you go ahead and pick them brick up. I don't want the team to wait at all for the brick.' . . . . Q. Will you tell us again which way these plates were leaning, in to the furnace or out? A. They were leaning away from me that way, (illustrating.) Q. That is, out backwards? A. Yes, sir." . . . . By the court: " When you loosened these bolts, you leaned it back yourself? A. Me and McCaffrey, yes, sir. Q. And went to work at the bricks? A. Yes, sir." By Mr. Dickey: " Q. Why didn't you throw the plate down, instead of leaning it back? A. Because he ordered me to go and pick these brick up. I had to go by his orders. Q. Wasn't it just as easy to throw the plate down flat as to lean it back? A. Yes, if I had orders to do it. He ordered me to go and pick these brick up, and I had to go by his orders, because he was the manager of the place. Q. You say the plate was leaning back against the other furnace? A. Yes, sir. Q. And you can't tell us what made it fall down? A. No, sir; can't say nothing about that." He had previously testified that Clark walked away when he told the plaintiff to pick up the bricks, and was asked: " Q. How long after he told you to do this was it until you got hurt? A. Well, some time in the afternoon it was. I was working there over two hours after he told me to pick these bricks up."

Upon the plaintiff's testimony, therefore, and it was not changed in the least by any other testimony on this subject, the plates were put in the position they occupied by the plaintiff himself and McCaffrey. There was no testimony that their

position was changed at all after they were placed and before they fell. They therefore fell from the position in which the plaintiff himself helped to place them. He does not say he had any orders to place them in that particular position, or in any position. It was exclusively his own act, assisted by another. From that position they fell. The plaintiff says he does not know what made the plates fall. No one else testified as to how or why the plates fell. The plaintiff was at work picking up bricks in front of the plates. It is perfectly manifest that if the plates fell because they were not placed in a secure position it was his own fault, and the consequences of that fault cannot with any propriety be visited upon the defendant. If, on the other hand, the plates fell because the bricks in front of them were removed so as to weaken the support upon which they rested, that also was the plaintiff's own fault, because it was he who removed them. He knew where the plates were and upon what they rested, and it was at least his duty to take care that he did not remove or interfere with their support. As he testified that he did not know what made the plates fall, there is no legitimate inference as to the cause of the fall, except that either they were insecurely placed, or their support was removed or weakened. For both of these possible causes the plaintiff alone is responsible, and the defendant not at all. Any other cause, if there were any other, must be guessed at, and that is not permissible. In Huey v. Gahlenbeck, 121 Pa. 238, we held that one who is injured when lawfully upon the premises of another, but does not show either the direct cause of the injury, or that it occurred through the negligence of the defendant, is not entitled to recover damages for the injury. In Phila. R. Co. v. Schertle, 97 Pa. 450, where a brakeman, in some unexplained way, fell under the wheels of an engine and was killed, the plaintiffs gave some proof of a want of repairs in the track and a defective step on the engine, and a recovery was had below, we reversed the judgment saying: " The case was submitted to the jury without evidence, and the verdict has no better foundation than a guess, or at most mere possibilities. This will not do."

In the present case, we cannot conceive of any other cause of the fall of the plates than one or the other of the two already

named, and for either of those it is not possible to hold the defendant liable. There was no proof at all of any interference with the plates by anybody but the plaintiff and McCaffrey, a fellow-workman. The learned judge of the court below was so much impressed with the absence of proof of negligence by the defendant that he told the jury he would not submit the case to them at all if it were not for the testimony that Frank Clark had said, " You go ahead with the work; I will take care of the plate," or words to that effect. He thought that those words uttered by the defendant's son were an assumption of the consequences of the possible falling of the plate, and if he neglected to give warning of the actual falling a liability of the defendant might thus be worked out. But we cannot assent to that view of the case, in view of the testimony of the plaintiff and his witnesses. If the fall were due to the insecure placing of the plates, or the removal or weakening of their support by the act of the plaintiff himself, he was guilty of contributory negligence, and for that reason alone cannot recover, whether a promise to give warning was given or not. The evidence does not permit of any other inference as to the cause of the fall of the plates, than the insecure placing of them or the careless removal of the bricks, and for both of them the plaintiff himself was responsible. But, in any event, under all the testimony, including that of the plaintiff, the falling of the plates took place in an instant, and without any premonitory indication, and it was not possible for Clark or any one else to give any preliminary notice or warning. There is not a particle of testimony in the case from which it is possible to infer that Clark did know, or could know, that the plates would fall, or were likely to fall, for a single moment before they did fall; and there is no evidence, therefore, upon which to found any inference of negligence on Frank Clark's part in that respect.

Moreover, the plaintiff testified twice, distinctly, that it was two hours, or upwards, after the time when Clark gave him the order to pick up the bricks, before the accident occurred, and that he was at work removing the bricks from in front of the plates all that time. He did once say that Clark was there two or three minutes before he was hurt, but the force of that testimony was all taken away by his re-cross-examination immediately following, in which he said that it was in the beginning,

two hours before the accident happened, when Clark said to him he would take care of the plate. Independently of that, however, there is no proof that even two or three minutes only before the accident happened was there any indication that the plates were likely to fall. In the case of Ford v. Anderson, 139 Pa. 261, we held that the ground of an employer's liability is not danger, but negligence, and that the test of negligence in respect of machinery is the ordinary usage of the business; and where there is a failure not only to show that the machinery was negligently constructed, but how the injury to the plaintiff occurred, it is error to refuse peremptory instructions for the defendant. In the case of Sykes v. Packer, 99 Pa. 465, we held that a master was not liable for negligence in omitting to give notice of the removal of a block and tackle used to support the building on which the master and servant were working, and the servant, not knowing of the removal, fell and was injured in consequence of such removal. We said: " The defendant (plaintiff) had as good an opportunity of seeing the tackle as any other employee had. He must be held to have known what was clearly visible to his sight. It was not necessary that he should be specifically informed of a fact so patent to him. It is not sufficient evidence of negligence that a jury has now found it was improper to remove the tackle, judged by its effect."

So, in the present case, the plaintiff had every opportunity to know the exact condition of the plates during all the time he was at work. If the danger was increased by his removal of the bricks, it was his duty to notice it and guard against it, no matter what was said by Clark. He was under no obligation to continue working in a dangerous place or employment, and if he did so he assumed the risk himself. He could not excuse his own want of care by the allegation that some one else had promised to care for him. On the whole testimony, we are clearly of opinion that the plaintiff was not entitled to recover.

Judgment reversed.


Mr. Justice MITCHELL noted his dissent.