# C. F. CHAMPION v. PERRY KIETH.

(Filed September 5, 1906.)

1. **PHYSICIANS AND SURGEONS—Rule of Responsibility.** A physician or surgeon is never considered as warranting a cure, unless under special contract for that purpose. His contract as implied by law is that he possesses that reasonable degree of learning, skill and experience which is ordinarily possessed by others of his profession; that he will use reasonable and ordinary care and diligence in the treatment of the case which he undertakes, and that he will use his best judgment in all cases of doubt as to the proper course of treatment. He is not responsible for damages for want of success, unless it is shown to be the result of want of ordinary skill and learning, such as ordinarily possessed by others of his profession, or for want of ordinary care and attention. He is not presumed to engage for extraordinary skill or for extraordinary diligence or care, nor can he be made responsible in damages for errors in judgment, or mere mistakes in matters of reasonable doubt or uncertainty.

2. **SAME—Evidence Insufficient, When.** On the trial of an action against a physician and surgeon, for damages for negligent treatment and want of ordinary care and attention, where it appears that such surgeon attended a patient suffering from an injury to the hip joint, and at the time called another physician of experience and standing to aid him in consultation and making an examination of the injury, and the two make a thorough examination and arrive at the conclusion therefrom that the thigh is dislocated, and thereupon set the same, and place it in a plaster of Paris cast, and afterwards both physicians visit the patient continuously until he moves away from the city, and where in making the diagnosis as to the injury sustained and the subsequent treatment thereof every precaution is taken and every method used which other surgeons possessed of a reasonable degree of learning, skill and experience would have used under like circumstances, but the treatment is not successful, and results unsatisfactorily: Held: That such evidence does not establish a case of negligence on the part of the physician, and does not show a failure on his part to use ordinary skill, care and attention: and further: Held: That under such circumstances, such surgeon is not responsible in damages for want of success.

(Syllabus by the Court.)

*Appeal from the District Court of Garfield County; before
James K. Beauchamp, Trial Judge.*

*Robberts & Curran,* for plaintiff in error.

*H. J. Sturgis, Manatt & Sturgis,* and *W. H. Hill,* for
defendant in error.

### STATEMENT OF FACTS.

This was an action brought by the defendant in error
against the plaintiff in error to recover damages for injuries
alleged to be the result of negligence and improper treat-
ment of the defendant in error while under the care of the
plaintiff in error, as a surgeon. The record discloses that
the defendant in error on the 5th day of February, 1903,
while handling a sack of grain in a flouring mill in the city
of Enid, where he was working, turned suddenly and his hip
gave away; that the plaintiff in error was called to attend
him, and upon answering the call, went to the mill and found
the defendant in error lying on the floor. It being too cold
to operate there, the surgeon had the defendant in error re-
moved to a nearby office. He then undertook to examine
the hip, but the defendant in error complained that it hurt
him, and that he could not stand to have it examined. The
plaintiff in error gave the defendant chloroform, and called
Dr. H. C. Bowers to assist in the operation. When Dr.
Bowers arrived, they examined the patient, as the record
discloses, very thoroughly, and arrived at the conclusion that
the thigh was dislocated. They set it, and put it in a plaster
of Paris cast, had the patient taken home, and afterwards
both visited him three or four times until he left the city of
Enid. As to the care and treatment that was given the pa-
tient, there seems to be no dispute, the evidence on this sub-

Champion v. Kieth.

ject being that of the plaintiff in error and his assistant, Dr. H. C. Bowers, their testimony being uncontradicted. The evidence also discloses that the plaintiff in error was a practicing physician and surgeon of fourteen years' experience, a graduate of the Louisville Medical College, of Louisville, Kentucky, having taken several post graduate courses. That Dr. H. C. Bowers is also a reputable surgeon of several years' experience, a graduate of the University of Louisville, having attended the college of St. Bartholomew at London, England, and having had experience in treating a large number of cases of similar character. As shown by his testimony, he had treated some thirty or forty cases of hip dislocation and fracture.

The record also discloses that some time prior to the injury, the defendant in error had been kicked on the hip by a horse, and at the time of the treatment of the injury here that the flesh about the hip was yet discolored from the effects of the kick. The defendant in error, at the time of the trial, had not fully recovered from the injury, and was unable to perform any great amount of manual labor. It was the contention of the defendant in error, at the trial, that the injury instead of being a dislocation of the hip joint as diagnosed by the physicians at the time of treatment, was in fact a fracture of the surgical neck of the femur, and that the negligence consisted not in the fact that the plaintiff in error was not a physician of ordinary skill, but in the fact that he did not use the ordinary care necessary to make a correct diagnosis of the injury, and in not giving the patient treatment for the injury actually sustained, viz. that of fracture, but on the contrary, treating the patient for dislocation, the result being that the plaintiff failed

to recover. A large number of expert witnesses were called and examined, and as is usual in such cases, the testimony covered a broad field.

To maintain the case of the defendant in error at the trial, several medical witnesses were produced, who had made examination of the patient long after the injury, and from their diagnosis, they seemed to be of the opinion that the injury was a fracture of the surgical neck of the femur, and that they could discover no dislocation. This, briefly, states the facts of the case. The remaining facts appear in the opinion.

Opinion of the court by

PANCOAST, J.: A number of errors are alleged in the petition in error, but only one is argued in the brief; that is, that the evidence at the trial failed to establish negligence, or want of care. At the outset, it might be well to state the rule of responsibility governing practicing physicians and surgeons under such circumstances. It is that:

"He is never considered as warranting a cure, unless under a special contract for that purpose. His contract, as implied by law, is that he possesses that reasonable degree of learning, skill and experience which is ordinarily possessed by others of his profession; that he will use reasonable and ordinary care and diligence in the treatment of the case which he undertakes, and that he will use his best judgment in all cases of doubt as to the proper course of treatment. He is not responsible for damages for want of success, unless it is shown to be the result of want of ordinary skill and learning, such as ordinarily possessed by others of his profession, or for want of ordinary care and attention. He is not presumed to engage for extraordinary skill or for extraordinary diligence or care, nor can he be made respon-

sible in damages for errors in judgment, or mere mistake in matters of reasonable doubt or uncertainty." *Tefft v. Wilcox,* 6 Kan. 61; *Banner v. Stormont,* 9 Kan. 51; *Biglow v. Fisher,* 59 Atl. 72; *Ewing v. Goode,* 78 Fed. 442; *State v. Housekeeper,* 16 Atl. 382; *Kaiford v. Raymond,* 29 Atl. 1117; *O'Hara v. Wells,* 15 N. W. 722; *Lankford v. Jones,* 27 Pac. 1069; *Martin v. Courteney,* 77 N. W. 815.

This rule of responsibility is treated in many different ways, but the one above quoted we think substantially gives the rule in a succinct form.

Now, applying the rule to the evidence in this case, is the evidence sufficient to establish a case against the plaintiff in error? There was no attempt to show that the plaintiff in error did not possess that reasonable degree of learning, skill and experience which is ordinarily possessed by others of this profession. The effort was to show that he did not use reasonable and ordinary care and diligence in the treatment of the case; in other words, that he did not properly diagnose the case, and treated it as one for dislocation, when he should have observed that there was a fracture, and treated it as such. The testimony of the plaintiff in error, and of his assistant, Dr. Bowers, abundantly shows that there was a dislocation. It seems from their testimony that the dislocation was easily determined. There was, however, some little apprehension that there might be a fracture, but from the extended examination made, it could not be determined, but in order to be doubly sure, they placed the injured limb in a plaster of Paris cast, which they claim would have been proper treatment not only for dislocation but for fracture as well. There is nothing in the record that indicates that the plaintiff in error and his assistant did

not use all methods at their command, to make a correct diagnosis of the injury.

It is claimed if there had been a fracture that while in many cases it might be difficult to diagnose, yet ordinarily, the fact could have easily been ascertained. The plaintiff in error in this case, according to the testimony of both physicians, did make an effort to determine whether or not there was a fracture, and failing, as they say, to determine any indications thereof, proceeded as for a dislocation.

On the trial below all the witnesses for the defendant in error conceded that a fracture of the neck of the femur was hard to detect, and that the best surgeons sometimes found it impossible to determine, stating that some of the best medical authorities declared that it is sometimes very hard to distinguish between dislocations and fractures of the surgical neck of the femur. The evidence also abundantly shows that injuries to the hip, whether that of fracture or dislocation, even under the most skillful treatment, often result very unsatisfactorily, and in diseased conditions are more or less permanent in their character.

To establish the claim of unskillful and negligent treatment, Dr. Baker was called by the defendant in error. It appears that he had examined the patient several months after the injury, and from his examination testified, among other things, as follows:

"There was no dislocation that I could determine. We arrived at the conclusion it was a fracture. The fracture was of the surgical neck of the femur. In my opinion, if it wasn't a fracture—I don't say positively it was; I don't think I said positively it was a fracture; I could have been mistaken in regard to it being a fracture, but my opinion was it was a fracture."

Dr. Way being called by the defendant in error testified among other things, as follows:

"We partially made a diagnosis of fracture of the neck of the femur, but as has already been testified to here on the witness stand, there were other things necessary to make the examination complete; I mean the X-Ray photograph."

Being asked to tell the jury whether or not such a fracture as an unimpacted fracture of the neck of the femur would or would not have been easily detected, he answered:

"Well, I would say that it is hard to detect, because our best writers claim some times it is impossible for us to detect it. Wythe is one of our best men. He claims it is hard sometimes to distinguish between dislocation and fracture of the neck of the femur."

As stated before, the testimony covered a wide range, but the above just quoted is that bearing directly upon the point under discussion. The testimony of other witnesses is practically the same. The question now arises: Was there negligence in the treatment of this case? If so, what is the evidence that shows it? Even admitting that there was a mistake in the diagnosis of the case, still the evidence in our opinion, fails to establish negligence. It might be here observed that even if the testimony of the defendant in error showed that there was in fact a fracture, which we do not think it does to any reasonable degree of certainty, still the examination having been made long after the injury, and at the time when all of the witnesses admit that a better and more satisfactory examination could be made than at the time of the injury, it would be the subject of some criticism upon that ground. Not a single witness testified with any reasonable degree of certainty that a fracture actually did exist.

The testimony also shows that several attempts had been made to take a photograph with an X-Ray machine, and while the testimony of the witnesses shows that that is the only method that can be employed to determine with reasonable certainty whether or not a fracture or dislocation exists, yet that is not always satisfactory, as a proper photograph cannot always be had, owing to the tickness of the parts and the shadows of the large bones, and it is only with the very best of these machines that a correct photograph can be obtained.

·It might be noticed here that the testimony of expert witnesses, in cases of this kind, is only at best opinionative; there is usually nothing in it very definite or conclusive. Opinionative testimony is never more than merely persuasive.

Counsel for the defendant in error refer to a rule often laid down by this court, that the verdict of a jury which is reasonably supported by the evidence will not be disturbed on appeal, but that is not the question before us. The question is whether there is any evidence to support the verdict; in other words: Wherein does the evidence· show carelessness and negligence, either in diagnosing the case or in treating it afterward? Even admitting that there was, a fracture of the neck of the femur, what could have been done to determine such injury other than what was done? It does not follow that because the treatment resulted unsatisfactorily, that therefore, the surgeon was negligent. There is no claim that the examination was not thorough, and carefully made, nor that the physician lacked the knowledge necessary to treat such cases; and we think it is a matter of common knowledge that in very many cases of like injuries, as well as others, under the most skillful treatment, Nature fails to

respond properly, and the result is permanent injury. We also know that some persons recover readily from injuries that are the most serious; in fact, cases that seem at first to be almost if not quite hopeless, while others fail to recover from very slight injuries. This is not because of any want of skill or of the negligence of the surgeon, but it is because of the inherent recuperative power in the patient, on the one hand, and the lack thereof, on the other.

In the trial of cases such as the one before us, courts should proceed with great care, as frequently there is liability that prejudice will creep into the minds of the jurors, and ofttimes a jury is liable to arrive at unwarranted conclusions, and from a reading of the entire record, it would seem that such is the case here, as the record discloses that the plaintiff in error is a reputable surgeon, possessing the ordinary skill and ability required, that he used the precaution of calling in an assistant with perhaps even more skill and knowledge than he himself possessed, that their examination was very thorough, that all precautions and appliances at their command were used, that the treatment given was proper and skillfully applied, and that the attendance afterwards was diligent on the part of both surgeons, the result alone, however, being unsatisfactory.

To hold the plaintiff in error liable in damages under such conditions would amount to a warranty of a cure, and this, too, in a case treated on his part as one of charity, without any expectation of a fee or an intent to charge one.

Having reached the conclusion that the evidence fails to sustain the verdict, the judgment of the court below must be reversed, and the cause remanded for new trial. It is so ordered.

Garber, J., not sitting; all the Justices concurring.