## WILEY v. WIGG.

No. 16379—Opinion Filed July 7, 1926.

Rehearing Denied March 8, 1927.

1. **Negligence—Causal Connection with Injury—Necessity for Proof.**

Plaintiff cannot recover where it is merely a matter of conjecture, surmise, speculation or suspicion, whether an injury was or was not due to the alleged negligence of the defendant.

2. **Physicians and Surgeons — Action Against Surgeon for Malpractice—Nonliability for Errors of Judgment.**

In an action against a physician for malpractice in the setting and treatment of a fractured limb, where there is no guaranty of cure, or contract for extraordinary skill or care, he is not presumed to engage for extraordinary skill or for extraordinary care, nor can he be made responsible in damages for errors in judgment and mere mistakes in matters of reasonable doubt or uncertainty.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Edwin R. McNeill, Judge.

Action by Edward T. Wigg against C. Z. Wiley. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Ross & Thurman, B. P. Slade, and Moss & Farmer, for plaintiff in error.

Biddison & Campbell and Carter Smith, for defendant in error.

Opinion by FOSTER, C. On the 15th day of November, 1922, the defendant in error, as plaintiff, commenced an action in the district court of Tulsa county against the plaintiff in error, as defendant, to recover the sum of $50,575, as damages on account of the alleged negligence of the defendant, a physician, in reducing a fracture of both bones in his left leg, below the knee. Parties will be hereinafter designated as they appeared in the trial court.

Plaintiff alleged in his petition that on the 4th day of June, 1922, he broke and fractured the bones of his left leg three or four inches below the knee, and employed the defendant to properly set said bones in their proper place, and to attend plaintiff until he should be cured; that the defendant entered upon such employment, but was negligent and unskillful in setting said bones, in attempting to reduce said fracture, in dressing said leg, and in failing to use proper care and skill in reducing the fracture by bandaging the leg so tightly as to impair and hinder the circulation of the blood in the leg and foot, and allowed said bandage to remain so long that the foot became gangrenous; that it was necessary to amputate plaintiff's leg in order to save his life, resulting in great pain and impairment of his usefulness, and that plaintiff was required to spend the sum of $275 as surgeon's fees, hospital expenses in the sum of $300, and damages by reason of pain and suffering in the loss of his leg in the sum of $50,000,

all in the sum of $50,575, for which he prayed judgment.

Thereafter defendant filed his answer denying all of the allegations in plaintiff's petition except as were therein admitted, admitting that defendant was a physician and surgeon practicing his profession in the city of Tulsa, and that the plaintiff engaged the defendant to administer to his fractured leg. Defendant further admitted that he accepted said employment and entered upon the discharge of his duties, and alleged that he gave the plaintiff the benefit of painstaking care, and was not careless in any respect in the performance of his obligations to plaintiff, and was not guilty of any negligence, carelessness, or unskillfulness, and specifically denied that he was in any respect responsible for the condition which necessitated the amputation of plaintiff's leg.

A reply denying the allegations of the answer was filed by the plaintiff, and the cause proceeded regularly for trial before the court and a jury. On November 13, 1924, the jury returned a verdict in favor of the plaintiff in the sum of $10,000. After unsuccessful motion for a new trial the defendant brings the cause regularly on appeal to this court by petition in error and case-made attached for review. A demurrer was interposed by the defendant to the plaintiff's evidence at the close thereof, and a motion for a directed verdict at the close of all the evidence, both of which were overruled and exceptions allowed.

Numerous propositions of error are urged by the defendant to obtain a reversal of the judgment, but in our view the proper disposition to be made of the case, on the record here presented, is whether there was any evidence reasonably tending to support the verdict of the jury, and whether the trial court should not have directed a verdict for the defendant at the close of all the evidence.

We shall therefore first consider whether there was sufficient evidence to support the verdict of the jury, and in the event we find in favor of the defendant on this proposition it will be unnecessary to consider the other proposition raised.

The primary act of negligence charged by the plaintiff in his petition and relied upon by him as a basis for a recovery was that the defendant, in reducing the fracture, wrapped the bandage too tightly, thereby cutting off the circulation and causing gangrene to develop, making it necessary to amputate the leg in order to save plaintiff's life.

From our examination of the record, the following facts appear to be established by the uncontradicted evidence: On Sunday, June 4, 1922, plaintiff's left leg was broken just below the knee during a baseball game, by reason of an apposing player jumping against him and fracturing and breaking both bones just below the knee; that plaintiff was immediately removed to the Oklahoma Hospital in Tulsa, and in about three-quarters of an hour after his arrival at the hospital, defendant set the leg and enclosed it in a wire splint, padded with cotton, from the heel to about six inches above the knee, wrapping the splint firmly with a cloth bandage of some kind; that on the following day plaintiff was removed to the Tulsa Hospital, and thereafter the defendant treated plaintiff, visiting him two or three times a day until the following Saturday; that sometime during the afternoon of Saturday following the accident, the defendant left Tulsa to visit a sick relative in a distant state, and Dr. Ray Wiley, a son of the defendant, and Dr. Cronk were left in charge of the plaintiff. These doctors, together with Dr. Goodman, examined the plaintiff immediately, and after a consultation which occurred in the evening it was determined that an amputation of plaintiff's leg would be necessary to save his life.

The examination of the plaintiff made by these doctors before the amputation disclosed the presence in the leg of an infection which these doctors designated as gas bacillus infection. This infection was described as a sort of poisonous gas in the tissue of the leg caused by a germ which they stated entered the leg from the outside, either through some abrasion of the skin or by being carried in the blood stream from the digestive tract, where this germ abounded and deposited in devitalized tissues in the region of the fracture, or, as contended by plaintiff, the infection superimposed itself upon the dead tissues in the leg after it had died. No expert was produced by the plaintiff by whom the presence of this infection was disputed, and all of the experts who examined the plaintiff's leg prior to the amputation testified to the presence of the infection. There was likewise no dispute that this infection, described as gas bacillus, could not have been directly produced by tight bandaging of the leg, or by pressure from the exterior.

It is contended by the plaintiff, however, that the defendant was negligent in wrapping the plaintiff's leg too tightly, resulting in a simple case of moist gangrene. To substantiate this claim he produced one

witness, Dr. Gray from Stillwater, who testified that the trouble from which the plaintiff lost his leg was due to pressure from the outside; that the discoloration appearing in the injured leg could only have been produced by pressure, from which it must be inferred that the bandage was too tight. No witness testified that the splint in which plaintiff's leg was enclosed was wrapped too tightly, nor was any direct evidence offered by which the jury was enabled to determine this matter.

To say that because there is evidence that the discoloration in plaintiff's leg was due to pressure, that this pressure could only have been produced by a tight bandage, in the absence of any direct testimony that the bandage itself was too tight, would be to authorize the jury to base its findings upon mere conjecture or speculation.

It is argued that the discoloration and the blisters found on plaintiff's leg, on Wednesday following the reduction of fracture, indicated that the blood supply was being cut off by too tight wrapping of the bandage, but, from the record here presented, it appears that the blood supply could be cut off from the injured member by a tearing of the blood vessels in the muscular tissue in the region of the break, resulting in practically the same discoloration or resulting in the appearance of the same, evidence of a lack of proper blood supply. Therefore the jury, if it should be correct in its conjecture that the bandage was too tight, would still be required to conjecture or guess that the lack of blood in plaintiff's leg was caused by the tight bandage rather than from an obstruction in the circulation due to a laceration or injury to the blood vessels in the region of the fracture.

Obviously, then, it is not a necessary conclusion that the bandage was too tight, or that if it was too tight it necessarily produced the discoloration and blisters appearing on plaintiff's leg on Wednesday following the reduction of the fracture.

In pointing out the inherent difficulties of plaintiff's theory of the case under the evidence presented, we do not take into consideration defendant's theory that the amputation was the result of an infection present in the wound itself when the plaintiff placed himself in defendant's care, immediately after the accident. This theory of defendant was vigorously controverted by the plaintiff, and it is not our purpose to enter into a comparison of the relative merits of the two theories, except to say that it does appear from the uncontroverted evidence in

the record that an infection described by all of the medical experts as gas bacillus infection was present in plaintiff's leg at and prior to the time of the amputation.

All of the doctors who made any actual examination of plaintiff's leg testified that this infection was present in the live tissues of the leg and was not confined to such tissue as had already become gangrenous. The only evidence on the part of plaintiff opposed to this testimony was that of Dr. Gray of Stillwater, who, without having made an actual examination of plaintiff's leg, gave his opinion that gas bacillus did not work in live tissue, but superimposed itself alone upon necrosed tissue. He was in agreement with all of the experts testifying in the case, that it could not have been directly produced by pressure, his theory being that the pressure produced the gangrene and the gas bacillus superimposed itself upon the dead or gangrenous tissue.

We have then a situation in which gas bacillus infection is present not directly produced by any pressure from the exterior. All of the experts who made any examination of the plaintiff at all testified that this infection was at work in the live tissue of plaintiff's leg at the time of the amputation. The only evidence opposed to this that we can find is the opinion of Dr. Gray of Stillwater, who made no examination of the plaintiff, that gas bacillus could not work in live tissue. If the plaintiff had substantiated his theory that the condition in plaintiff's leg at the time of the amputation was due alone to moist gangrene, superinduced by too tight bandaging of the leg, whereby the circulation had been cut off, the evidence of Dr. Gray, to the effect that gas bacillus works only in dead tissue, might be regarded as sufficient to sustain the verdict of the jury, but in the absence of any competent evidence to this effect the opinion of the expert will likewise be regarded as mere conjecture and speculation.

The rule that negligence cannot be inferred but must be proven is too well established to require the citation of many authorities. In Schaff v. Ferry, 105 Okla. 259, 232 Pac. 407, this court said:

"* * * As stated in Labatt's Master & Servant (2d Ed.) vol. 4, sec. 1604, plaintiff cannot recover where it is merely a matter of conjecture, surmise, speculation, or suspicion whether the death was or was not due to the alleged negligence of defendant."

See, also, Midland Valley Railway Co. v. Kellogg et al., 106 Okla. 237, 233 Pac. 716.

In Reese v. Clark, 146 Pa. 465, 23 Atl. 246, the Pennsylvania court said:

"It is not permissible to guess at the cause of an injury, and assume that it is something for which the defendant was responsible."

We come now to consider whether any actionable negligence on the part of defendant has been shown in respect of the treatment of plaintiff after the discoloration made its appearance in the leg. The evidence is uncontradicted that the plaintiff had sustained a break of both bones of the left leg just below the knee. There is a conflict in the evidence as to whether there was any abrasion of the skin on the leg, or in the region of the break, but there is no dispute that immediately after the accident plaintiff began to suffer intense pain, which increased in intensity until the time of the amputation about one week after the accident, and that before the leg was set it was necessary to administer an anaesthetic to ease the pain. With plaintiff in this condition the defendant was employed to render professional service in reducing the fracture, and in treating the injured leg. There was no guaranty of cure or contract for extraordinary skill. He was an experienced physician, having reduced some 70 fractures during his practice of some 20 years. He immediately laid the plaintiff on an operating table; placed him under the influence of an anaesthetic, and after securing the proper apposition of the bones in the broken leg, placed the leg in a wire splint, and wrapped it securely to bring about the proper union at the point of the break and to prevent friction. It is not disputed that in order to obtain the desired result in the reduction of the fracture, it is necessary to place the leg in a splint and wrap it rather tightly, and, as before pointed out, there is no competent evidence in this record that the bandage was wrapped around plaintiff's leg too tightly, or that the defendant failed to exercise reasonable care and caution in this particular.. On Monday or Tuesday following the setting of the bones a slight discoloration appeared in plaintiff's big toe, which discoloration increased appreciably until Wednesday, when the defendant cut the bandage up to the knee. The removal of the bandage disclosed some discoloration in the leg below the fracture, and also disclosed some water blisters on the foot and ankle and on the leg below the knee. There being no competent evidence from which the jury could legitimately conclude that this discoloration was caused by a too tight bandaging of the leg, it must follow that this discoloration arose from some cause for

which the defendant was not responsible. If, then, such discoloration was due to some cause for which the defendant was not responsible, did the defendant fail to exercise due care in the treatment administered plaintiff after he became aware of the discoloration?

Plaintiff contends that the proper treatment in a case of gas bacillus infection, as in a case of simple gangrene, was to immediately elevate the leg and apply hot applications to it, and that the defendant in the instant case was negligent in that he did neither, but contented himself with sprinkling powder on the diseased limb and applying hot unguentine; that since there was evidence in the record showing that the defendant failed to administer the proper treatment, the verdict of the jury should be sustained. If there had been some evidence in the record reasonably tending to show that the defendant, by some negligent act or omission of his own, was responsible for the diseased and discolored condition of plaintiff's leg, we would have no hesitancy in sustaining the verdict of the jury because of the evidence of improper treatment mentioned above.

A condition appeared in plaintiff's leg which, whatever may have been the cause, suggested an impairment of circulation in that member. There is no suggestion in the evidence that the defendant failed to observe this condition, or that after observing it he omitted to apply any treatment whatever. At the time defendant first observed it there was no evidence that the leg was in such condition as to suggest its immediate amputation. It is conceded that the appearance of blisters indicated that the leg was still alive.

At this time the circulation was observable by resorting to the simple experiment of pinching the big toe. There is no contention made, as we understand it, that the defendant ignored this condition, and failed to resort to any treatment at all, but the contention is that the treatment did not go far enough, that is to say, that he did not elevate the leg or apply the right kind of artificial heat.

There is no suggestion that the treatment given aggravated the trouble, or that it did not tend to relieve the condition of impaired circulation then apparent in the injured leg. The fact that defendant did not appreciate the probability that gas bacillus gangrene or moist gangrene might develop from the discolored condition of plaintiff's leg rendering the amputation of the leg imperative,

and in not treating the leg accordingly, does not, we think, amount to a want of ordinary care and attention, such as to render him liable under the rule established in this jurisdiction. At most it would indicate a mere mistake or error of judgment in a matter of reasonable doubt or uncertainy. About three days after defendant administered the treatment which under all of the evidence consisted of the application of powder to the leg and the application of hot unguentine fermentation or poisonous gas bubbles were, by the testimony of all of the examining physicians, found to exist in plaintiff's leg. Whatever may have been the cause of this condition, it is not disputed that it was a deadly poison which made amputation necessary immediately in order to save the patient's life.

It was an extraordinary condition. Can it be said that the elevation of plaintiff's leg and the application to it of artificial heat three days earlier would have prevented this extraordinary condition. or if such treatment would in all probability have prevented the condition detailed above, can the defendant be chargeable with actionable negligence in failing to pursue the treatment to an extent which might have prevented the condition? We think not.

The general rule applicable to a situation of this kind is stated in Champion v. Kieth, 17 Okla. 204, 87 Pac. 845, as follows:

"His contract as implied by law is that he possesses that reasonable degree of learning, skill, and experience which is ordinarily possessed by others of his profession; that he will use reasonable and ordinary care and diligence in the treatment of the case which he undertakes, and that he will use his best judgment in all cases of doubt as to the proper course of treatment. He is not responsible for damages for want of success. unless it is shown to be the result of want of ordinary skill and learning. such as ordinarily possessed by others of his profession. or for want of ordinary care and attention. He is not presumed to engage for extraordinary skill or for extraordinary diligence or care. nor can he be made responsible in damages for errors in judgment. or mere mistakes in matters of reasonable doubt or uncertainty."

It is elementary that the mere happening of an accident or the mere occurrence of an injury raises no presumption of negligence, but that negligence must be proved. C., R. I. & P. Ry. Co. v. Watson. 36 Okla. 1, 127 Pac. 693; St. L. & S F Ry. Co. v. Fick, 47 Okla 530, 149 Pac. 1126.

In Kernodle v. Elder, 23 Okla. 743, 102 Pac. 138. it is said in the first paragraph of the syllabus:

"In an action against a physician for malpractice in the setting and treatment of a fractured limb, where there is no guaranty of cure or contract for extraordinary skill or care, and where the evidence fails to show that the results are not such as usually and ordinarily result in such cases where treated by an ordinarily skillful physician using ordinary care, then there is a failure of proof, and plaintiff is not entitled to recover."

In the body of the opinion this court said:

"It is nearly always the defendant's judgment which is on trial; and on the hearing the jury and the parties are all sitting and speaking after the fact, while the unfortunate physician when he acted was perhaps required by the conditions to grope, deliberate, and often speedily act, and always before the fact. After he has acted and the results are different than he desired or expected, and different than were expected or desired by the patient, if a suit is brought, the physician is confronted with all of the after-acquired knowledge. and his responsibility is weighed from that standpoint rather than from the true one. A preponderance of the evidence in cases of this character is sufficient to sustain a plaintiff's cause. No more should be required. and no more is required; but it should be certain on the part of the court and jury that they are acting from actual evidence before them, properly referable to the cause, and that the judgment, when against the physician. is based upon such evidence, and not upon bias, conjecture, or inference."

We have considered the entire evidence, and conclude that the evidence was insufficient to support a verdict for the plaintiff, and the trial court therefore erred in not sustaining defendant's motion for a directed verdict at the close of all the evidence. The judgment of the trial court is therefore reversed, and the cause remanded, with directions to grant defendant a new trial.

By the Court: It is so ordered.