**Dr. Wade SISLER, individually, and d/b/a Mercy Hospital and Surgical Institute, a sole proprietorship, Plaintiff in Error,**

**v.**

**Darrell L. WHITTEN, Defendant in Error.**

**No. 40489.**

Supreme Court of Oklahoma.

March 24, 1964.

Rehearing Denied May 27, 1964.

Application for Leave to File Second Petition for Rehearing Denied June 30, 1964.

Jerry Swanson, Tulsa, and Rucker, Tabor, Shepherd & Palmer, O. H. "Pat" O'Neal, Tulsa, for plaintiff in error.

Paul W. Brightmire, Tulsa, for defendant in error.

BERRY, Justice.

This action originally was brought by Darrell L. Whitten, hereafter referred to as plaintiff, against Dr. Wade Sisler, individually and dba Mercy Hospital and Surgical Institute, a sole proprietorship, herein referred to as defendant, and Dr. T. S. Williams to recover damages resulting from malpractice alleged to have occurred on and after September 2, 1940, about 20 years prior to the commencement of the action, when plaintiff was then 2 years of age.

The action pertaining to Dr. Williams, the physician named as party defendant, was dismissed by the trial court and is not concerned in this appeal. The jury rendered a verdict in favor of plaintiff against defendant. From the trial court's denial of the motion for new trial, defendant has appealed.

Defendant urges error of the trial court under two propositions: (1) the judgment should be reversed and the case remanded because of plaintiff's improper and prejudicial argument to the jury; and (2) the trial court erred in failing to sustain defendant's demurrer to plaintiff's evidence, and for not sustaining defendant's motion for a directed verdict at the close of all the evidence.

The occurrences which transpired and provided a basis for the contention that plaintiff's argument was improper and prejudicial are related hereafter. The record reflects that defendant's counsel, on voir dire examination of the jury, inquired whether any juror knew a certain Dr. W. of Oklahoma City. Thereafter during voir dire plaintiff's counsel stated that Dr. W. would not testify but that there would be evidence during the trial to show why he would not be present. It was brought out on cross examination that plaintiff had been examined by Dr. W., but evidence was not introduced explaining the doctor's absence at the trial.

During closing argument defendant's counsel told the jury that when a witness was available but not used by plaintiff in the trial, the only logical conclusion therefrom was that such witness disagreed with plaintiff's lawsuit.

In closing plaintiff's counsel advised the jury that plaintiff did not call Dr. W. as a witness because defendant and defendant's counsel had talked with the doctor and prevailed upon him not to testify against defendant. Plaintiff's counsel then stated: "But I want to say that Dr. W. agreed this was the grossest case of malpractice that he had ever seen in his life." The jury was strongly admonished to disregard counsel's remarks and also the trial court admonished plaintiff's counsel. Defendant's motion for mistrial was overruled.

Much of plaintiff's brief is predicated upon occurrences outside the record. Plaintiff concedes that what Dr. W. "agreed" concerning this malpractice case, standing alone, was an improper remark. But it is urged that under the facts and circumstances defendant "provoked and invited the remark" and thus is estopped to assert error thereon, or to claim that prejudice resulted therefrom.

Plaintiff's position is that his conduct is to be excused under the doctrine of invited error. In support of this theory plaintiff charges that defendant went to Dr. W. after plaintiff had been examined and defendant's attorney had received notice that the doctor's deposition would be taken, and prevailed upon Dr. W. not to give his deposition because defendant had no insurance.

Plaintiff's counsel went to Dr. W's residence at the appointed time but could find neither the doctor nor the defense lawyers. In the notice to take depositions the doctor's name had been omitted and only the address of his residence appeared thereon. Plaintiff did nothing further to have Dr. W. present at the trial or to secure his deposition, and states on appeal that because of such tampering with the witness it became necessary to secure medical testimony elsewhere.

Plaintiff further urges that the first reference to Dr. W. was by defendant's attorney on voir dire examination when counsel stated that plaintiff had been examined by this doctor. Plaintiff insists such question on voir dire came as a surprise and he then suspected defendant was attempting to take an "unfair advantage" of the fact of the doctor's absence and the failure to obtain his deposition. And because this question was asked, plaintiff was prompted under the circumstances to make reference to Dr. W. in his voir dire examination, the purpose being only to "eliminate possible fears of his (Dr. W's) appearing as a surprise witness" from defendant's mind.

During cross-examination defendant asked whether plaintiff had been to see other doctors in addition to Dr. W. Plaintiff takes the position that this was calculated to create the false impression that he had been sent all over the country but was unable to find a doctor who would participate in what defendant referred to as a lawyer's suit.

Plaintiff points out that it was intended to leave Dr. W. out of the issues since he had not anticipated the lengths to which defendant would resort in offering a damaging, highly prejudicial and bad-faith argument centered around the absence of Dr. W. as a witness. Plaintiff's reasoning in this regard arose from the fact that defendant

knew that Dr. W. would not be present and that defendant, himself, was responsible in that regard; that Dr. W. was not available under compulsory process; and that plaintiff had done all he could to obtain testimony from Dr. W.

Plaintiff then refers to defendant's closing argument which, in substance, was that the lawsuit was not plaintiff's but the lawyer's for the plaintiff, and that the case had been filed before a doctor examined plaintiff and before plaintiff or counsel knew what the facts were; and although plaintiff had told the jury he would explain Dr. W's absence, this had not been done, and the "only logical explanation" of this doctor's absence was because he disagreed with plaintiff's lawsuit, and the jury was entitled to take this conclusion into consideration.

From Dr. W's affidavit, tendered by plaintiff in response to defendant's motion for new trial and included in the record, it appears the doctor had (1) examined plaintiff two or three years prior to trial and ascertained existence of Volkman's Contracture; (2) in 1962 the doctor agreed to give a deposition expressing the opinion plaintiff's condition resulted from negligence of the attending physician in failing to recognize and relieve impaired circulation within the first few hours following injury; (3) shortly prior to the date for the taking of the deposition, defendant called upon the doctor at his residence and discussed the case, and the doctor then changed his mind about testifying for plaintiff. Dr. W. thereafter called plaintiff's lawyer and advised he would not give his deposition and later returned the material furnished by plaintiff's attorney with a notation that Dr. Sisler had no insurance; (4) Dr. W. did not make himself available for the deposition and had no further contact with plaintiff or his counsel until after trial; (5) when called a few days before the case was set for trial defendant's counsel and the defendant were informed by Dr. W. that he would not testify; and (6) the affidavit further declared the affiant never made any statement that would lead either defendant or

his lawyer to believe that his testimony would have been anything other than favorable to plaintiff, since his reasons for not wanting to testify were not based on the merits of the case.

We are particularly aware that neither the affidavit nor any of the statements by plaintiff on appeal have been denied.

Under defendant's Proposition No. 1 urging improper and prejudicial closing argument by plaintiff, it is contended:

"Defendant properly, in his closing argument, advised the jury that where there is a witness available to plaintiff and he is not used, then it is presumed that the evidence would be detrimental to plaintiff. * * *

"Thereafter, plaintiff, in closing arguments went completely outside the record and evidence and beyond the bounds of good practice and propriety. * * *"

Plaintiff concedes his own argument was improper but asserts that the defendant cannot now complain since he, in bad faith, provoked and invited the argument.

■ In order to ascertain the merit in plaintiff's contention, we must consider matters that do not appear in the record of the proceedings during trial. Plaintiff relies upon the text rule stated in 88 C.J.S. Trial § 184, p. 364:

"* * * It has been held that caution should be exercised in permitting counsel to comment on the failure of the opposing party to call witnesses, and the practice should be permitted only where it appears that the witness could have been procured and it is a fair inference from the conduct of the party under all of the circumstances that he knew or believed that the testimony of the witness would be adverse, and for that reason did not produce him."

■■ The trial court did not err in admitting the affidavit of Dr. W. when considering defendant's motion for new trial. Our view of the matter is supported by the

holding in Cosar v. Bemo, Okl., 282 P.2d 222, wherein at page 226 we said:

"It is a well recognized principle of appellate review that a party should not be allowed to take advantage, on appeal, of an error he has invited at the trial; and the 'fact that the * * * statement of facts not in evidence was provoked or invited by the adverse counsel has often been held to excuse the error.' " (citing cases)

282 P.2d at p. 227, in considering the matter of invited error, we stated:

" * * * This court has held that in cases of the latter class, it must appear 'quite plainly' that the verdict was influenced by the retaliatory remarks before it will be set aside on account thereof. * * * " (citing cases)

And, in Hazelrigg Trucking Co. v. Duvall, Okl., 261 P.2d 204, Syllabus 4 states:

"Improper argument by counsel for the plaintiff, while not to be condoned, does not call for a reversal of a verdict for plaintiff where it reasonably appears from the whole record that the jury was not influenced thereby, and apparently followed directions of the court not to consider such improper argument."

Review of the authorities cited by defendant as supporting the argument on appeal discloses that those cases failed to consider the issue of "invited error". Neither do those cases show the judgments therein resulted from, or were influenced thereby.

■ Upon consideration of the record, we hold the error asserted on appeal was invited by defendant, and there is failure to show the verdict "quite plainly" was influenced by plaintiff's remarks.

The second contention urged for reversal of this judgment is predicated upon the alleged insufficiency of the evidence to sustain the verdict. The argument is that the evidence failed to show plaintiff's arm was set improperly or that defendant used improper technique or judgment in the treatment administered. In support of this posi-

tion defendant asserts the undisputed evidence showed Volkman's Contracture can be caused in various ways and cannot always be avoided; no evidence showed excessive swelling, or any contracture for a month, and even medical records introduced by plaintiff disclosed good circulation in the hand and arm.

The uncontroverted evidence established plaintiff's having suffered a supracondylar fracture of the left humerus; accomplishment of an acceptable closed reduction, and the bandaging, taping and immobilization of the arm in the "Jones position", which is at an angle of about 65 degrees flexion; that plaintiff was afflicted with Volkman's ischemic contracture of the left arm and that his condition at the time of trial was permanent.

The evidence is sharply conflicting as to whether defendant requested that plaintiff remain in the hospital, instructed the parents concerning further care and treatment required, or thereafter did anything to alleviate plaintiff's pain or the conditions which allegedly resulted in ultimate disability.

The medical testimony likewise was in severe conflict. For plaintiff there was medical testimony tending to establish that the Volkman's contracture resulted from impairment of circulation in plaintiff's arm due to improper bandaging and lack of after-care; and this condition occurred following and within 48 hours of the injury. The manner in which plaintiff's arm was treated and immobilized was proper, although accepted medical practices recognized such contracture had to be guarded against, and maintenance of adequate circulation was of greater importance than satisfactory reduction of the fracture. Further, there are numerous warning signs of impaired circulation, and proper care and treatment requires the patient to remain under close observation of the attending physician or trained personnel. There was positive testimony that plaintiff's hand appeared badly swollen, and defendant split the bandage with scissors and treated a

sore (local gangrene) which appeared within 48 hours of reduction, but did not change arm position.

Defendant's evidence was to the effect that Volkman's contractures sometimes result from injury to arteries, but can result from bandaging or bruising the arm, or even without a fracture, and such injury can develop four or five weeks following an accident. There was further medical evidence that in this type of injury the blood vessels are traumatized and torn; that such contracture can occur in many ways from injury itself. An orthopedic surgeon who examined the medical records and X-rays of plaintiff, testified defendant's treatment had nothing to do with plaintiff's disability, and in his opinion this resulted from the injury alone.

Defendant cites and relies upon Kernodle v. Elder, 23 Okl. 743, 102 P. 138, and Wiley v. Wigg, 124 Okl. 30, 254 P. 22, in support of the argument that the verdict herein necessarily had to result from bias, conjecture or inference. In the Elder case, supra, Syllabus 1 states:

"In an action against a physician for malpractice in the setting and treatment of a fractured limb, where there is no guaranty of cure or contract for extraordinary skill or care, and where the evidence fails to show that the results are not such as usually and ordinarily result in such cases where treated by an ordinarily skillful physician using ordinary care, then there is a failure of proof, and plaintiff is not entitled to recover."

In the body of the opinion the Court states that recovery in such cases requires showing of two essentials: (1) legal detriment suffered by the plaintiff; and (2) that such detriment may not be referable solely to the accident suffered, but the evidence also must show that considering both the accident and the employment of a physician the plaintiff still is left in a worse condition than was his right to demand or expect if his physician were ordinarily skillful and tendered proper care. This test was based upon the rule adopted in territorial days in Champion v. Kieth, 17 Okl. 204, 87 P. 845. And, the opinion further states that both essential elements must be supported by tangible, substantial evidence which both the court and jury can grasp and understand.

The evidence concerning the cause of plaintiff's condition was conflicting. And the testimony relative to whether the defendant's professional attentions in this instance were discharged with ordinary skill, care and diligence likewise was in conflict. In considering whether, under the evidence adduced at the trial, the defendant's ministrations tendered plaintiff ordinarily skillful and proper care, the jury was not bound to accept the testimony of defendant's expert witnesses. This Court often has announced that the weight to be given expert testimony is entirely for the trier of facts who is not required to give controlling influence to the opinions of such experts. Gulf Oil Corp. v. Hughes, Okl., 371 P.2d 81. The jury determined from the evidence that defendant had failed to treat plaintiff in an ordinarily skillful, careful and diligent manner. There is competent evidence to support this determination.

Defendant also cites Wiley v. Wigg, supra, quoting therefrom at length in support of the claim that the present appeal is governed by the rule that conjecture, surmise or speculation cannot support a judgment. Defendant then urges applicability of that case upon the ground the evidence in the present case wholly failed to show the bandage was too tight, or the fracture improperly set.

The rule in the Wiley case is inapplicable for the obvious reason same is distinguishable upon the facts. The expert testimony therein held to be conjectural and speculative was given by a witness who testified the trouble which caused the loss of plaintiff's leg resulted from outside pressure. However, there was absolutely no direct evidence plaintiff's leg had been bandaged too tightly and the jury was left to infer that the bandage was too tight; and the

.defendant's evidence was positive that the necessity of the amputation was due to a germ infection. The case clearly does not support defendant's argument.

We do not consider defendant's conclusion that there is no evidence showing plaintiff's bandage was too tight to be permissible under this record. Defendant testified he did not want plaintiff to leave the hospital, and that he explained to the parents how they would have to care for plaintiff if taken from the hospital. However, the evidence is undisputed plaintiff was taken home following reduction of the fracture, was brought back to the hospital the following morning, and then again the next day when the ulcer on his hand was dressed. The evidence in defendant's behalf presents situations which, under certain circumstances, might be ascertained as the cause of ischemic contracture rather than improper bandaging. We do not believe, however, that such testimony can be considered as having converted plaintiff's positive evidence into testimony which must be denominated as being in the realm of conjecture and speculation.

In Stagner v. Files, 182 Okl. 475, 78 P.2d 418, Syllabus 2 states:

"Where there is sufficient basis in the evidence of a malpractice action for reasonable inference that the defendant should have discovered the cause of the plaintiff's suffering and should have properly treated said condition, there is no error in the submission to the jury of the question of the defendant's negligence."

The test for determination as to whether a plaintiff's evidence is sufficient to withstand a demurrer or defendant's motion for directed verdict at the close of all the evidence, is restated in Syllabus 2 of Price v. Smith, Okl., 373 P.2d 242, as follows:

"In passing upon a demurrer to the evidence or a motion for a directed verdict, the trial court should consider as true all the evidence favorable to the party against whom the demurrer

or motion is directed, together with all inferences reasonably to be drawn therefrom, and should disregard all conflicting evidence favorable to the demurrant or movant."

We are of the opinion and hold the judgment herein is supported by competent evidence and is hereby affirmed.