## EDWARDS v. ULAND.

[No. 24,375. Filed June 26, 1923.]

1. PHYSICIANS AND SURGEONS. — *Malpractice.* — *Negligence.* — *Diagnosis.*—A physician or surgeon is not an insurer; he is only bound to possess reasonable skill and to use ordinary care, and the fact that he makes a mistake in diagnosis will not, of itself, create a cause of action against him, and, in the absence of evidence of any lack of skill, or of any lack of care in making the examination and investigation of a case and forming his judgment, mere proof that the diagnosis was wrong will not support an action for damages. p. 381.

2. PHYSICIANS AND SURGEONS. — *Malpractice.* — *Negligence.* — *Diagnosis and Treatment.*—A failure of a physician or surgeon to cure is not enough, in itself, to raise an inference of negligence in the diagnosis and in the treatment adopted. p. 381.

3. PHYSICIANS AND SURGEONS.—*Malpractice.*—*Instructions.*—In an action against two physicians for alleged negligence in making a wrong diagnosis and subsequent treatment based thereon, an instruction that a physician owes his patient the

duty to use his unbiased judgment in determining the disease from which his patient is suffering, and if he fails so to do, and allows any ill feeling toward another physician or surgeon to bias his judgment or to influence his treatment of the patient, and such action results in injury to the patient, the physician or surgeon is liable for damages, is erroneous because outside the issues.  p. 382.

4.  TRIAL.— *Binding Instruction.— Rule Stated.—* A binding instruction assuming to declare the liability of a defendant on certain facts must embrace all of the facts on which such liability depends or it will be erroneous.  p. 383.

5.  PHYSICIANS AND SURGEONS. — *Malpractice. — Damages. —Instruction.—*In an action against physicians and surgeons for malpractice, where there was evidence of enmity between defendants and another surgeon who, before and afterward, treated the plaintiff, also that one of the defendants "made fun of him," when he talked of going to another surgeon, another defendant said that if he did so, the other surgeon would cure him and get the credit for it when they (the defendants) had really done the work, and that when he asked that an operation be performed, one of the defendants said he had been butchered and cut all to pieces and it did no good, an instruction that the jury could assess plaintiff's damages "in such amount as in your judgment the evidence warrants" was erroneous, as it could be construed as authorizing punitive damages, and did not properly limit the compensatory damages that could be awarded to him.  p. 384.

From Knox Circuit Court; *William H. Bridwell,* Special Judge.

Action by Raymond Uland against Edward T. Edwards and others.  From judgment for plaintiff, the defendants appeal.  *Reversed.*  (Transferred from the Appellate Court under subdivision 2, §1394 Burns 1914.)

*Kessinger & Hill, W. A. Cullop* and *Hays & Hays,* for appellants.

*A. J. Padgett* and *J. W. Lindley,* for appellee.

EWBANK, J.—Appellee recovered a judgment for $2,000 in an action for alleged malpractice.  The complaint, so far as it is pertinent to a consideration of the

questions presented for review, alleged substantially as follows: That defendants (appellants) were and are duly licensed physicians and surgeons engaged in the practice of their profession; that plaintiff employed them to treat a disorder which made his arm very painful, and told them he previously had been afflicted with osteomyelitis, from which necrosis, or "bone death" had resulted, with sloughing off of parts of the bone, and the formation of pus in the bone, marrow and adjoining soft tissues; that defendants attempted to diagnose plaintiff's ailment, but negligently failed to give it a proper diagnosis, and adopted a vaccine treatment; that osteomyelitis is infectious, and the only known treatment for it is by a surgical operation and the removal of the affected portion of the bone by cutting it away; that, because of the incorrect diagnosis, defendants treated plaintiff's arm with vaccine, and not by surgery, for a period of time, during which the infection spread to parts of the bone not at first infected, so that ultimately, parts of the bone of plaintiff's arm had to be removed in a much larger amount than would have been necessary if a surgical operation had been resorted to in the first instance; that such spreading of the infection was because of the negligence, unskillfullness and carelessness of the defendants in their diagnosis and treatment of said disease; that if the defendants had properly treated said injury at the time they first undertook such treatment, and had removed the small affected part of the bone at that time, plaintiff would have recovered promptly, with the full use of his arm; that said disease of osteomyelitis is a disease easy to diagnose and easy to cure, and that it was unskilful, careless and negligent for the defendants to fail to diagnose plaintiff's ailment as osteomyelitis, and it was careless and negligent on their part to try to treat it by other means than by a surgical operation;

that thereby plaintiff was caused to suffer pain, and his elbow joint was made stiff, and he sustained damages in an amount named, though no special damages by reason of money expended, expense incurred or loss of time are alleged or claimed.

Something is said in the complaint about incisions in the flesh made by defendants for drainage of the pus being allowed to close, and about a rubber drainage tube used in an incision being inserted in such a careless, unskilled and negligent manner that it did not afford proper drainage, and being negligently left in the wound without cleansing, and when it was stopped up. But it is not alleged that these acts and omissions made plaintiff's arm any worse, or even that they caused him pain or inconvenience, or otherwise injured him.

The defendants answered by a denial. The cause was submitted to a jury, to whom the court gave 35 instructions, refusing to give certain others asked by the defendants. A motion for a new trial for the reasons that (a) the verdict is not sustained by sufficient evidence, and that (b) the court erred in giving each of certain instructions, and (c) in refusing to give certain others, and (d) that the damages were excessive, was overruled, and proper exceptions were reserved, which ruling is assigned as error.

Obviously, the theory of the complaint was that of recovering damages for negligence in making a wrong diagnosis and giving treatment accordingly, treating with vaccine for a supposed disease of the flesh and blood, instead of performing a surgical operation to remove infected bone. And a perusal of the evidence and instructions tends to convince one that the case was tried throughout on that theory. But the evidence fell short of making out a cause of action for negligence in making a diagnosis. The evidence proved, without contradiction, that both of the defendants

graduated from medical colleges, each taking a four year course, that each had had hospital training, each had duly obtained a license to practice his profession, and each had practiced for some years; that, in making a diagnosis, they obtained a history of plaintiff's case; that they stripped him and observed the scars from the former operations he had undergone; examined his blood for pus germs and by counting the number of white blood cells; examined his urine, testing it for albumin, sugar, gravity, acidity and reaction, and found it normal; examined the lame arm by pressure for any tenderness resulting from a disease of the bone and found none; procured an ex-ray picture of the arm which showed the bone not involved; examined the pus under a microscope as soon as it came out through the skin, and decided that the infection was streptococcus; that, upon this examination, they decided that only the tissues were infected, until after five months, when they found the bone to be infected and removed parts of it by a surgical operation, and that still more of the bone was infected and had to be removed when another surgeon was called a few weeks thereafter; that at all stages they consulted together. There was much evidence that the measures adopted to aid in the diagnosis were proper, and the undisputed evidence of plaintiff himself was that the surgical operation performed by another surgeon a few days after defendants stopped treating him had to be followed by another surgical operation later for the removal of bone, and that the other surgeon had perviously operated many times and removed pieces of bones, having had plaintiff under the influence of ether ten or twelve times for that purpose, and removed many pieces from beneath the skin without ether; there was no evidence that any means of diagnosis used by defendants was improper, or that the exercise of care required the use of any other means

in deciding what was the matter with plaintiff's arm and how it should be treated. Plaintiff's own witnesses testified that the treatment adopted would have been proper for the disease of the soft tissues which defendants diagnosed plaintiff's ailment to be. But three expert witnesses testified that, in their opinion, upon certain facts which some of the evidence tended to prove must have been learned by defendants from such history and examination, the plaintiff had acute osteomyelitis, requiring a surgical operation; while six expert witnesses testified that upon those facts, in their opinion, the plaintiff was not afflicted with osteomyelitis when defendants were treating him for infection of the tissues, but that the treatment which was given was proper for what he really was afflicted with.

Assuming that plaintiff was afflicted with osteomyelitis from the beginning and that defendants were mistaken in their diagnosis, such facts 1, 2. alone would not give him a right to recover damages. A physician or surgeon is not an insurer, and does not bind himself to make a correct diagnosis and effect a cure or to respond in damages. He is only bound to possess reasonable skill and to use ordinary care; and if he makes a mistake in his conclusion as to whether a sore place on the skin has its origin in the flesh or in the bone under the flesh, he is excused from liability if, possessing reasonable skill, he has used ordinary care in making an examination, and has honestly reached the mistaken conclusion by the use of such skill and such care. In the absence of evidence of any lack of skill, or of any lack of care in making the examination and forming his judgment, mere proof that the diagnosis was wrong will not support a verdict for damages. Not having warranted a cure, if he has reasonable skill and learning and uses ordinary care, he is not liable for the consequences of an honest mistake

of judgment. *English* v. *Free* (1903), 205 Pa. 624, 55 Atl. 777; *Wells* v. *Ferry Lumber Co.* (1910), 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426; *Champion* v. *Keith* (1906), 17 Okla. 204, 87 Pac. 845; *Dye* v. *Corbin* (1906), 59 W. Va. 266, 53 S. E. 147; *Warner* v. *Packer* (1910), 139 App. Div. 207, 123 N. Y. Supp. 725; *Heath* v. *Glisan* (1869), 3 Ore. 64; *Luka* v. *Lowrie* (1912), 171 Mich. 122, 136 N. W. 1106, 41 L. R. A. (N. S.) 290; 21 R. C. L. p. 391, §36. See *Longfellow* v. *Vernon* (1914), 57 Ind. App. 611, 621. A failure to cure is not enough, in itself, to raise an inference of negligence in the diagnosis and in the treatment adopted. *Tomer* v. *Aiken* (1904), 126 Iowa 114, 101 N. W. 769; *Dye* v. *Corbin, supra; Williams* v. *LeBar* (1891), 141 Pa. 149, 21 Atl. 525; *Shelton* v. *Hacelip* (1910), 167 Ala. 217, 51 So. 937; *Hoover* v. *Buckman* (1915), 194 Ill. App. 308; 21 R. C. L. p. 392, §36. The evidence was not sufficient to sustain the verdict on the theory of negligence in making a diagnosis.

But, even if we should have overlooked evidence bringing the case within the rules of law on which plaintiff's right of recovery depends, the cause must still be reserved for error in giving instructions. Plaintiff testified that when he suggested an intention of going to "Dr. Bowers", about six months after defendants began treating his arm, Doctor Funk said: "Well, I suppose he will begin to knock on me", and, with a profane oath, called Dr. Bowers a vile name. And plaintiff's mother testified that after he had been put under the care of defendants at the hospital, she told "the doctors" to "go to the bone", but "the doctor" said he would not, and said of plaintiff that "He has been cut up by Dr. Bowers too much now." There was also other evidence which tended to prove that the feeling between Dr. Funk and Dr. Bowers had not been friendly. The court gave an instruction to

which appellants reserved an exception as follows (our
italics) : "25.   Where a person places himself as a
patient in the hands of a physician or surgeon, it is
the duty of such physician or surgeon to use an un-
biased judgment in determining the disease of his pa-
tient, and if he fails so to do and should *allow any ill
feeling toward another physician or surgeon,* if you find
that such ill feeling existed, *to bias his judgment or to
influence his treatment of such patient, and such action
results in injury to such patient, such physician or sur-
geon would be liable to such patient."*

No issue of a wilful refusal to give proper treatment
to plaintiff's injuries because of dislike for Dr. Bowers
had been tendered by the complaint, only negli-
gence being charged, and the instruction as to
liability of the defendants if they "should allow
any ill feeling toward another physician or surgeon
\*   \*   \*   to influence their treatment of such patient"
was outside of the issues, which related only to alleged
negligence in carelessly making a wrong diagnosis, and
giving treatment accordingly.   Besides, this instruc-
tion does not even suggest the limitation that the "treat-
ment", as influenced by ill feeling toward another
physician or surgeon should have been improper, or that
the "judgment" as "biased" by such ill feeling should
have been incorrect, except as may be implied from
the words "and such action results in injury to such
patient."   But under a complaint which only charged
that plaintiff suffered pain and sustained a loss of
health and weight while undergoing treatment by de-
fendants, and a stiffened elbow which crippled him for
life as a consequence, and only charged that these in-
juries were caused by negligence in making a wrong
diagnosis and in giving treatment pursuant to such
diagnosis, plaintiff could only recover for the injuries
so alleged, sustained by reason of the facts as charged.

Injury, if any, which may have resulted to plaintiff that was not covered by such allegations could give him no right of recovery in this action, whatever right they might give him in an action based thereon. Moreover, this instruction assumed to recite the facts on which it was stated the "physician or surgeon would be liable to such patient", but omitted the elements (a) that the diagnosis was incorrect, (b) that it was negligently made, (c) that it and the treatment based thereon were the proximate cause of the injuries for which damages were asked by the complaint, and that (d) no negligence of plaintiff contributed to cause such injuries. It declared a liability in case ill feeling toward another physician or surgeon should bias the judgment or influence the treatment, "and such action results in injury to such patient", without proof of any other facts whatever. In so doing it violated the rule of law that a binding instruction assuming to declare the liability of a defendant upon certain facts must embrace all of the facts on which such liability depends or it will be erroneous. *Grand Trunk, etc., R. Co.* v. *Melrose* (1906), 166 Ind. 658, 669, 671, 78 N. E. 190; *Indianapolis Traction, etc., Co.* v. *Matthews* (1912), 177 Ind. 88, 105, 97 N. E. 320; *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 209, 115 N. E. 578, L. R. A. 1917E 242; *Pennsylvania Co.* v. *Clark, Admr.* (1922), 191 Ind. 470.

In addition to the evidence above referred to, indicating enmity between defendants and a rival surgeon, plaintiff testified that when he complained of

5. pain in the bone, Dr. Edwards (a defendant) made fun of him and said it was imagination; that the physician at the hospital who took the x-ray picture did not let plaintiff see it, and when asked to show the plates to him, a few days before the trial, said he did not have time; that when plaintiff talked of going to another surgeon, Dr. Funk (a defendant)

said that he was then nearly well, and, if he did so, "they will cure you, and they will get the credit for it, when we have really done the work"; that when plaintiff asked that an operation be performed, Dr. Funk said he had been butchered and cut all to pieces and it did no good; that plaintiff was strong and healthy before his arm became lame, and worked as a riveter; that since the second operation on his arm after defendants ceased treating him, he had been cultivating a farm; which evidence, together with the evidence above recited tending to prove wilful refusal to give proper treatment because of enmity to another physician, on which the court had given the instruction above set out, might have been understood by the jury to make out a cause of action for punitive damages, if not otherwise instructed. No instructions were given directing the jury to award only such damages as would fairly compensate the plaintiff, or telling them that they could not give punitive damages, or which attempted in any manner to state what was the measure of damages. On the question of damages, the court gave only the following instruction (our italics): "31. If you find for the plaintiff you will assess *his damages in such amount as in your judgment the evidence warrants,* not exceeding the amount claimed in his complaint." As applied to the evidence that had been admitted, such an indefinite instruction was erroneous, as authorizing the jury, if they chose, to award damages not limited to compensation for that excess of pain and suffering endured, and for the amount in which plaintiff's capacity to earn money was impaired, by reason of the alleged negligence, over what he would have suffered, and the amount in which his earning capacity would have been impaired because of the disease with which he was afflicted if his arm had been treated with proper skill and

due care.   All that defendants did having been lawful except only as it may have been negligently done, plaintiff was only entitled to compensatory damages.   *Dorris* v. *Warford* (1907), 124 Ky. 768, 100 S. W. 312, 9 L. R. A. (N. S.) 1090, 14 Ann. Cas. 602; *VanMeter* v. *Crews* (1912), 149 Ky. 335, 148 S. W. 40; *Challis* v. *Lake* (1901), 71 N. H. 90, 96, 51 Atl. 260; *Miller* v. *Frey* (1896), 49 Nebr. 472, 475, 68 N. W. 630; *Dunman* v. *Raney* (1915), 118 Ark. 337, 176 S. W. 339; *Hood* v. *Moffett* (1915), 109 Miss. 757, 69 So. 664, L. R. A. 1916B 662, Ann. Cas. 1917E 410; *Helland* v. *Bridenstine* (1909), 55 Wash. 470, 104 Pac. 626.   Other questions discussed by counsel may not arise upon a retrial of the case.

The judgment is reversed with directions to sustain the motion of defendants for a new trial.