## McCoy *v.* Buck.

[No. 12,736. Filed July 1, 1927. Rehearing denied February 16, 1928. Petition to transfer dismissed May 16, 1928.]

*Kessinger & Hill,* for appellant.
*Arnold J. Padgett* and *W. M. Alsop,* for appellee.

NICHOLS, J.—Action by appellee against appellant, wherein appellee seeks to recover damages from appellant on account of injuries alleged to have been sustained by her while a patient under the care and treatment of appellant, an X-ray specialist, because of his alleged malpractice. Answer in general denial; trial by jury; verdict in favor of appellee for $2,500 and judgment thereon. Overruling appellant's motion for a new trial is the error relied upon for reversal. After averment in her complaint as to the burns which she suffered from the use of appellant's X-ray machine, appellee further avers that her said injuries and her pain and sufferings were caused wholly by the carelessness and negligence of appellant in that the affliction with which she was suffering at the time she employed appellant to treat her was not of the kind and character requiring the use of an X-ray machine, and appellant

carelessly and negligently advised and used said X-ray machine, well knowing that it was wholly unnecessary so to do, that it was dangerous to use such machine, and liable to cause injuries to her to do so; that appellant was careless and negligent in the use of said machine in treating her, in that he exposed her body to the X-ray machine in too close proximity to her body, thereby unnecessarily causing the severe burns and injuries; and that said X-ray machine, being of such highly dangerous character, was one which required great skill on the part of the person using same upon the human body, that appellant did not possess sufficient skill, and was wholly unskilled and ignorant as to the proper manner, use and application of such machine upon the human body, and that it was careless and negligent on his part to use said machine without possessing sufficient knowledge and skill in relation to its use and effect on her body.

In discussing the questions involved in this case, we must do so in view of the holding of the Supreme Court in *Edwards* v. *Uland* (1923), 193 Ind. 376, 140 N. E. 546, where it was held that a physician or surgeon, and we include also one who is an X-ray expert, is not an insurer, and does not bind himself to make a correct diagnosis and effect a cure or to respond in damages. He is only bound to possess reasonable skill and to use ordinary care, and if he makes a mistake in his conclusion, he is excused from liability if, possessing reasonable skill, he has used ordinary care. He is not liable for an honest mistake in judgment. That case further holds that a failure to cure is not enough, in itself, to raise an inference of negligence in the diagnosis and in the treatment adopted. The doctrine of *res ipsa loquitur* is therein denied so far as it might apply to that case, and we may say to this one.

The case of *Ewing* v. *Goode* (1897), 78 Fed. 442, is a

leading one on the questions here involved, and has been frequently cited by other courts including our own. In that opinion, written by Taft, C. J., the court says: "In many cases, expert evidence, though all tending one way, is not conclusive upon the court and jury, but the latter, as men of affairs, may draw their own inferences from the facts, and accept or reject the statements of experts; but such cases are where the subject of discussion is on the border line between the domain of general and expert knowledge, as, for instance, where the value of land is involved, or where the value of professional services is in dispute. There the mode of reaching conclusion from the facts when stated is not so different from the inferences of common knowledge that expert testimony can be anything more than a mere guide. But when a case concerns the highly specialized art of treating an eye for cataract, or for the mysterious and dread disease of glaucoma, with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. Again, when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes.

"Before the plaintiff can recover, she must show by affirmative evidence—first, that defendant was unskillful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. The naked facts that defendant performed operations upon her eye, and that pain followed, and that subsequently the eye was in

such a bad condition that it had to be extracted, established neither the neglect and unskillfulness of the treatment, nor the causal connection between it and the unfortunate event. A physician is not a warrantor of cures. If the maxim *'Res Ipsa Loquitur,'* were applicable to a case like this, and the failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon, causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.'

"When a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither."

The principles here involved were considered by this court in an opinion by Enloe, P. J., in the case of *Funk* v. *Bonham* (1926), 151 N. E. (Ind. App.) 22, and the doctrine was again there announced that, generally speaking, no inference of negligence can be drawn from the result of the treatment of a physician or surgeon, and that, in the absence of a special contract, they are not insurers, and there must be evidence of negligence by witnesses qualified to testify.

Only those are qualified to testify as to whether there was negligence in the method of treatment who themselves possess the skill required to administer such treatment, who are themselves experts in such treatment, and to them the jury must listen. *Adolay* v. *Miller* (1916), 60 Ind. App. 656, 111 N. E. 313; *Longfellow* v. *Vernon* (1914), 57 Ind. App. 611, 105 N. E. 178.

The uncontradicted evidence in this case shows that appellant had the necessary knowledge and skill to treat appellee for eczema with an X-ray machine; that the treatment of that disease by X-ray is a proper treat-

ment, and recognized by all authorities; that appellee was suffering with that disease; that appellant treated her but once therefor with an X-ray machine; using a standard machine. All of the expert witnesses who testified as to whether the method of treatment used by appellant, as given by himself, testified that such method was proper for the treatment of eczema. There is some contention that there is a dispute in the evidence as to whether appellant placed his instrument so that the focal distance from the diseased parts was seven, seven and half and eight inches, appellee having testified that the instrument was as close to her body as it could be without touching it. But this does not say that the focal distance was thereby closer to the diseased parts than appellant had testified. Appellant's evidence as to his method of treatment is uncontradicted.

There is some discussion both in the briefs and in oral argument as to the effect of the subsequent treatment of the affected parts by other physicians, and as to whether the injuries suffered might not have resulted from subsequent improper treatment, but we do not need to determine as to this. It is sufficient for us to hold that appellant, by the undisputed evidence, was fully qualified to use an X-ray machine, that he used approved methods in treating appellee, using a standard machine, and it not appearing that he did not use ordinary care, he can not be required to respond in damages, even though the injuries suffered were the result of the use of the X-ray machine.

We deem it unnecessary to consider other errors assigned, including error in giving instructions. In the event of another trial, the court will understand that instructions must be in harmony with the principles herein announced.

The judgment is reversed.

## On Petition for Rehearing.

Nichols, J.—On rehearing, appellee contends that we omitted any reference to appellant's alleged negligence in exposing her body to the X-ray for too long a space of time. Appellee states in her brief that appellant does not state this act of negligence as alleged in the complaint, but she does not elsewhere in her brief specifically discuss such alleged negligence. She does state, in a general way, that "the vital point in the case is this, was it good practice or good treatment for appellant in giving appellee X-ray treatments for her ailment of eczema, to give a dosage of such strength as to injure the skin and the tissues beneath the skin." If this statement by appellee may be said to present the question of negligence in the time of exposure, there is no other specific reference thereto in appellee's brief. As appears by the statement, appellee reasons that a bad result must be accepted as evidence of negligence in the method of treatment. In the original opinion, we held that an inference of negligence cannot be drawn from the results of the treatment of a physician or surgeon.

Appellee contends that there is a contradiction as to the time of exposure between the evidence of her husband and that of appellant. As we interpret the evidence, there was not necessarily such contradiction. But if such were seemingly so, appellee's husband testified that appellant, while manipulating the X-ray machine, held his watch in his hand while making the exposures, and appellant testified that, by the watch, the exposures were from thirty to forty seconds duration, while the husband testified that, *in his opinion*, each exposure was from 15 to 20 seconds, repeated at each place. Even if the exposures were, as to time, as testi-

fied to by appellant, there is no evidence of negligence in such method of treatment.

Petition denied.