DR. B. F. CARPENTER, ET AL. *v.* NEWTON E. CAMPBELL, ET UX.

[No. 970A151. Filed June 30, 1971. Rehearing denied August 12, 1971.]

*Fred F. Eichhorn, Jr., James L. Kennedy, Schroer, Eichhorn & Morrow,* of Hammond, for appellants.

*Lester Murphy, Jr., Murphy, McAtee, Murphy & Costanza,* of counsel, of East Chicago, for appellees.

SULLIVAN, P.J.—This action was brought by Appellees, Newton E. Campbell and Norma J. Campbell, for damages for personal injuries and loss of services growing out of the alleged malpractice and negligence of the Appellants, who are physicians and surgeons engaged in the general practice of medicine and in the case of appellant Shellhouse, Administratrix of the Estate of Michael Shellhouse, M.D., deceased.

On June 9, 1964, the plaintiff-appellee Norma J. Campbell underwent a Caesarean section for the delivery of a child. Her primary prenatal care was by Dr. B. F. Carpenter, Dr. Michael Shellhouse was the surgeon selected by Dr. Carpenter. Dr. Carpenter assisted in the June 9 surgery. Dr. Lundeberg, an office associate and the employer of Dr. Carpenter, was not present during this operation.

Subsequently, on July 4, the plaintiff, Norma J. Campbell, suffered an obstructed bowel and was taken to the hospital at the direction of the defendant, Dr. Carpenter, where further surgery was done on July 5 to relieve the bowel obstruction. Dr. Shellhouse performed this surgery assisted by Drs. Carpenter and Lundeberg. The patient remained in the hospital until August 12, 1964.

During the period July 4 to August 12 the patient's condition was at times grave and she required extensive medication and attention in the cure of her medical condition. During said hospitalization, in the early hours of July 5, a drug known as Levophed was administered, which drug was known as a life-saving drug used to build blood pressure in cases of shock. It is a caustic drug, but can be essential to life in cases of deep shock. A quantity of the Levophed came in contact with the skin and subcutaneous tissue of the plaintiff's left hand, causing scarring. On July 20 an operation took place for the purpose of rectifying the scarring. On September 4 a skin graft was done to the plaintiff's left arm to correct the skin defect thereon.

The issues were formed by agreement of the parties at a pre-trial conference which resulted in an order delineating the issues as follows:

(1) The plaintiffs rely upon the theory of res ipsa loquitur concerning the negligence by all the defendants in the Caesarean section operation performed in June of 1964 and the second operation performed July 5, 1964. Plaintiffs asserted that plaintiff Norma J. Campbell was unconscious when all of these acts were performed and in the complete custody, control and care of the defendants and that the

results of both of said operations were not the normal and natural results to be expected from such surgery absent negligence upon the part of said defendants.

(2) In addition thereto, plaintiffs allege twenty separate acts of specific negligence committed by one or more of the defendants at various times during Mrs. Campbell's medical care and treatment.

The cause was tried to the court without jury. At the conclusion of the plaintiffs' evidence plaintiffs voluntarily withdrew certain allegations of negligence from the consideration of the court and certain others were withdrawn by the court's ruling upon defendants' motion to withdraw such issues. Thus at the time the cause was submitted to the court for decision and jugment the only issues remaining for determination were as follows:

(1) Res ipsa loquitur concerning negligence by all the defendants in the Caesarean section operation performed in June of 1964;

(2) The following specific allegations of negligence:

(a) The defendants were negligent in releasing plaintiff from the hospital on June 15, 1964, when the wound from her Caesarean section surgery was still seeping and infection was present;

(b) That the defendants, Carpenter and Lundeberg, were negligent in the removal of plaintiff's stitches following the Caesarean section surgery;

(c) That the defendants, Carpenter and Lundeberg, were negligent in not having someone present at all times on the morning of July 5, 1964, while Levophed was being administered to the plaintiff;

(d) That the defendants, Carpenter and Lundeberg, were negligent in failing to fasten down or otherwise secure plaintiff's arm while Levophed was being administered on the morning of July 5, 1964.

On March 9, 1970, the Court entered its findings and judgment which read insofar as pertinent as follows:

"The court having heretofore heard the evidence and arguments of counsel and being duly advised, finds for the plain-

tiffs and against all defendants that defendants were negligent in their care and treatment of Norma J. Campbell in connection with the operation performed by them upon her on June 9, 1964, and that as a proximate result thereof the plaintiff, Norma J. Campbell, was injured and damaged in the amount of $10,000.00, and the plaintiff, Newton E. Campbell, was damaged in the amount of $3,000.00.

"The court further finds that the defendants, B. F. Carpenter and R. A. Lundeberg, were negligent in their treatment and care of the plaintiff, Norma J. Campbell, on July 4th and 5th, 1964, and that as a proximate result thereof the plaintiff, Norma J. Campbell, was injured and damaged in the amount of $15,000.00 and that the plaintiff, Newton E. Campbell, was damaged in the amount of $2,000.00.

"It Is Therefore Adjudged and Decreed that the plaintiff, Norma J. Campbell, have and recover of and from all of the defendants herein, the sum of $10,000.00, and that the plaintiff, Newton E. Campbell, have and recover of and from all of the defendants herein the sum of $3,000.00.

"It Is Further Adjudged and Decreed that the plaintiff, Norma J. Campbell, have and recover of and from the defendants, B. F. Carpenter and R. A. Lundeberg, in addition to the above, the sum of $15,000.00, and that the plaintiff Newton E. Campbell, have and recover of and from the defendants, B. F. Carpenter and R. A. Lundeburg, in addition to the above, the sum of $2,000.00."

This appeal presents two primary issues in addition to three less crucial specifications of error. They are:

(1)   Where the doctrine of res ipsa loquitur is applicable under the particular facts and, if so, whether it can be made to apply to assisting surgeons as well as the chief surgeon, and further, whether if the doctrine is applicable it can be extended by respondeat superior to the physician who employed the assisting surgeon who in turn selected the chief surgeon.[1]

(2)   Whether the evidence is sufficient to justify a finding of negligence on the part of Drs. Carpenter and Lundeberg.

1.   By reason of our determination upon the first portion of the stated issue, we do not concern ourselves with the breadth and extent of the doctrine's application in a proper malpractice case nor whether it applies to physician-employers or to surgical assistants. See Annotation at 85 ALR 2d 889.

## DOCTRINE OF RES IPSA LOQUITUR NOT
## APPLICABLE TO CAESAREAN SURGERY PERFORMED

Medicine is an inexact science and serious complications, even death, arising from the practice thereof should not in most situations be properly chargeable to a physician without proof of some negligent act. To hold otherwise would require physicians to insure rapid and proper recovery by their patients from any and all surgical and postoperative treatment. *Edwards* v. *Uland* (1923), 193 Ind. 376, 140 N. E. 546; *McCoy* v. *Buck* (1927), 87 Ind. App. 433, 157 N. E. 456, rehearing denied 160 N. E. 46. To apply the doctrine of res ipsa loquitur in all cases where an unexpected result occurs would stifle the necessary development of medical science. No physician would dare use new procedures, especially in surgery, if resulting injury would subject him to prima facie liability for negligence.

As a general proposition it may be stated that the doctrine of res ipsa loquitur permits negligence to be inferred from the unusual character of an injury suffered when it occurs while a patient and his actions or reactions are under a doctor's care and exclusive control. For the doctrine to be applicable, the injury must be of a character which would not occur but for an act of negligence and it must be caused by an agency or instrumentality within the exclusive control of the physician. In the last analysis, res ipsa loquitur is an evidentiary doctrine—a mere method of proof. It is premised upon an assumption that in certain instances an occurrence is so unusual that absent a reasonable justification those in control of the situation should be held responsible.

We believe the current posture of Indiana law to be as above stated. *Worster* v. *Caylor* (1953), 231 Ind. 625, 110 N. E. 2d 337 (overruled on different grounds, *New York, Chi., etc. R.R. Co.* v. *Henderson* (1957), 237 Ind. 456, at page 464, 146 N. E. 2d 531). Stated somewhat differently, the doctrine may be invoked in medical malpractice actions when a layman is able to say that as a matter of common

knowledge the consequences of the professional treatment are not those which ordinarily result if due care is exercised and that when there is no basis of common knowledge for such a conclusion, application of the doctrine may be grounded upon expert medical testimony. See *Fehrman* v. *Smirl* (1963), 20 Wis. 2d 1, 121 N. W. 2d 255, 122 N. W. 2d 439.

The only untoward consequence flowing from the Caesarean section surgery of June 9 (the only event within the issues possibly subject to the doctrine of res ipsa loquitur) which could possibly indicate negligence on the part of defendants in the performance of that operation was the bowel obstruction and abdominal infection (peritonitis) which followed and which were found to exist when surgery was performed on July 5.[2] The bowel obstruction protruded through a portion of the abdominal wall. Its cause was factually undetermined.

Dr. Scully, a consulting physician upon plaintiff-appellee's case, testified that bowel obstructions may be occasioned by various causations; that in his view the obstruction was a sequel to the Caesarean section of June 9 but that it was not a unique complication. He stated that bowel obstructions could come about after such surgery irrespective of the care which a patient receives from the surgeon or the attending physician. Further, he opined that infection can logically follow a bowel obstruction even though the patient receives proper care from the surgeon and attending physician. Two other expert witnesses testified in substance that a partial bowel obstruction is a fairly common complication following abdominal surgery. They noted that such obstructions can be caused variously, usually by increased abdominal pressure such as by coughing or excessive strain. (Plaintiff had been shown to be a heavy smoker with a chronic cough.) It was noted that while such a bowel obstruction does not necessarily

2. We do not decide whether the evidence would support a finding of any specific act of negligence on the part of defendants during the course of the June 9 Caesarean section surgery or during the postoperative treatment for that particular surgery for no such act alleged remained within the issues to be determined by the trial court following submission of all the evidence.

indicate the lack of due care, neither does it necessarily indicate the exercise thereof.

The testimony of record clearly indicates that the complications aforementioned could have existed without negligence on the part of defendants or any of them. The doctrine of res ipsa loquitur is here inapplicable as in *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 599, 106 N. E. 365, wherein the court refused to apply the doctrine "[w]here the injury might well have resulted from any one of many causes . . .". See also *Wallstedt* v. *Swedish Hospital* (1945), 220 Minn. 274, 19 N. W. 2d 426. Under such circumstances the doctrine should not be applied even if the injury alleged is a rarity in such situations or is an unnatural reaction to the medical treatment given. *Burnside* v. *Evangelical Deaconess Hospital* (1970), 46 Wis. 2d 519, 175 N. W. 2d 230, and *Buchanan* v. *Downing* (1964), 74 N. Mex. 423, 394 P. 2d 269.

Negligence cannot be inferred here on the part of defendants by application of the doctrine of res ipsa loquitur merely because Mrs. Campbell experienced severe infection following her June 9 surgery. As stated by Chief Justice, then Circuit *Hospital* (1970), 46 Wis. 2d 519, 175 N. W. 2d 230, and *Buchanan* v. *Downing* (1964), 74 N. Mex. 423, 394 P. 2d 269.

> " 'Due to the great variety of infections and complications which, despite all precautions and skill, sometimes follow accepted and standard medical treatment, courts reject the notion that because infection follows a treatment an inference of negligence is to be made.
>
>       * * *
>
> " 'The important public policy considerations inherent in this situation were pointed out by Chief Justice, then Circuit Judge, Taft:
>
> "If the maxim, 'Res ipsa loquitur,' were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' " Ewing v. Goode, C.C.S.D. Ohio 1897, 78 F. 442, 443.' "

See also *Harmon* v. *Rust* (1967 Ky. App.), 420 S. W. 2d 563; *Shurpit* v. *Brah* (1966), 30 Wis. 2d 388, 141 N. W. 2d 266.

## EVIDENCE WAS SUFFICIENT TO JUSTIFY A JUDG-MENT FOR NEGLIGENCE WITH REFERENCE TO THE ADMINISTRATION OF THE DRUG LEVOPHED

The defendants Drs. Carpenter and Lundeberg contend that there was insufficient evidence of record from which the trial court could find them negligent with reference to the administration of the drug Levophed. To the contrary, the record contains ample testimony to the effect that it was good medical practice to have someone in attendance at all times during introduction of such a caustic drug and, further, that not only was Dr. Carpenter not in personal attendance but was in fact in the physicians' lounge. Neither did Dr. Carpenter require or see to it that a nurse or other properly trained personnel remained present. There was testimony that the intensive care area was available but that Dr. Carpenter made a specific judgment decision not to place Mrs. Campbell in intensive care because he felt she was receiving and would receive every protection without it. We believe there was adequate evidence from which the court could find for plaintiffs with respect to the alleged negligence of Dr. Carpenter concerning administration of the drug Levophed. Accordingly, it was proper for the court to enter judgment against Dr. Carpenter and as required by the doctrine of respondeat superior against his employer, Dr. Lundeberg.

In addition to the two principal contentions of appellants, they make three other claims of error.

## THE DAMAGE AWARD HERE AFFIRMED IS NOT EXCESSIVE

Unless the amount awarded is such as to shock the conscience or to induce the belief that such amount resulted from

prejudice, partiality, or corruption, it is well established that we will not reverse. *Northern Indiana Public Service Company* v. *Otis* (1969), 145 Ind. App. 159, 250 N. E. 2d 378. The award herein sustained is well within the bounds of proper discretion on the part of the trial court.

## THE RECORD DOES NOT DISCLOSE THAT THE TRIAL COURT CONSIDERED ALLEGATIONS OR EVIDENCE NOT WITHIN THE ISSUES

Appellants maintain that the court considered evidence and allegations which had been withdrawn from the case. The findings and judgment do not support such contention. When the findings and judgment of the court hereinbefore quoted are viewed in the light of the only issues remaining upon submission of the cause for determination, it is quite clear that only the actual Caesarean section surgery performed on June 9, 1964, and the lack of care attendant to the administration of the drug Levophed on July 5, 1964, could possibly have influenced the trial court's decision.

A letter accompanying the formal judgment as sent to trial counsel is not conclusive concerning the factors which prompted the trial court's judgment nor do the literal words of that letter support appellants' conclusion that the trial judge considered anything other than the Levophed complication and negligence in the performance of the Caesarean section operation. Such letter did mention "five bad results in succession," i.e., (1) the Caesarean section operation and subsequent bowel obstruction, (2) the July 5 surgery to remove the bowel obstruction and attendant infection, (3) subsequent surgery for scar repair occasioned by Levophed administration, (4) skin graft, leaving scar on hip or thigh, and (5) a subsequent skin graft also to the hand damaged by Levophed. There is no showing, however, from the letter or otherwise that the trial court awarded damages for those "bad results" as separate injuries or acts of negligence. It is more likely that the trial court was stating that as to the

application of res ipsa loquitur, the bowel obstruction and protrusion and the infection in that area were of such proportion as to lead him to apply the doctrine. The trial judge was no doubt stating that the nature of the complications was such as to indicate negligence as their sole cause. The other three "bad results" mentioned all relate to the Levophed contact with plaintiff's skin as the initial cause thereof and were properly considered by the trial court. From this state of the record, we cannot speculate that the trial court considered any evidence other than that related to the issues then before him. The findings and judgment in this respect therefore contain no error.

## JOINDER OF ACTIONS BY HUSBAND AND WIFE WAS PROPER

Appellants contend that it was error to permit the plaintiffs to join their separate causes of action in a single complaint and to try their actions at the same time. Appellants' contention in this regard is quite clearly without merit. It is advisable to join actions when at all possible. Such is true even in matters to be submitted to a jury unless joint prosecution and trial of actions will serve to confuse the jury or prejudice the parties. In the case tried below, the factual matters dealing with the negligence of defendants were necessarily identical since Mr. Campbell's right of recovery was derivative. The only difference between the two causes was as to the recovery permitted, i.e., personal injury damages for the wife and recovery of medical expenses and loss of services for the husband. The fact that the actions were joined in the same complaint is of no consequence and the error if any was harmless as disclosed by present Trial Rule 19 (A) (2) (b). Said rule change, although it became effective after the proceedings below, clearly shows the desirability of combining actions and trials when feasible. Said rule reads:

"(A) A person who is subject to service of process shall be joined as a party in the action if

"(2)   he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

\*   \*   \*   \*

"(b)   leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

See *2 Harvey, Ind. Practice,* Rule 19, pp. 248-249, and p. 265.

For the foregoing reasons, the decision and judgment below is affirmed in part and reversed in part. That portion of the decision and judgment awarding damages to plaintiffs and against defendants Carpenter and Lundeberg in the sum of $15,000.00 to plaintiff Norma J. Campbell and $2,000.00 to plaintiff Newton E. Campbell is hereby affirmed. That portion of the decision and judgment awarding damages from all defendants to plaintiff Norma J. Campbell in the sum of $10,000.00 and to plaintiff Newton E. Campbell in the sum of $3,000.00 is hereby reversed.

Cause is now remanded to the trial court for modification of its judgment not inconsistent with this opinion.

Buchanan, Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 163.