Robert STANLEY, Plaintiff-Appellant,

v.

William FISHER, D. O.,
Defendant-Appellee.

No. 1–680A162.

Court of Appeals of Indiana,
First District.

March 11, 1981.

Rehearing Denied April 16, 1981.

David W. Dennis, Dennis, Reinke & Vertesch, Richmond, for plaintiff-appellant.

Ronald L. Cross, Reller, Mendenhall, Kleinknecht & Milligan, Richmond, for defendant-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Robert Stanley, appeals from a decision granting a motion for judgment on the evidence in favor of defendant-appellee, William Fisher, D. O.; and from a jury verdict entered in favor of the defendant-appellee. We reverse and remand.

## STATEMENT OF THE FACTS

Robert Stanley (Stanley), after deciding to have a vasectomy, contacted Dr. William Fisher (Fisher). On February 20, 1976, Fisher performed the vasectomy in his office. The procedure lasted about one to one and one-half hours. Fisher used the bilateral incision method which entails making an incision of approximately one-fourth of an inch in length in both sides of the scrotum. During the surgery, Fisher encountered a bleeding vein on the right side. This vein was ligated and surgery continued. According to Fisher, no bleeding, other than that which is superficial and normally encountered when cutting tissue, occurred on the left side. At the end of surgery Stanley was allowed to go home and was instructed to elevate his feet and apply ice continuously to his scrotum for the next 24 hours.

Approximately one hour after the completion of surgery Stanley noticed that his scrotum has started to swell. By the next morning, it had swollen to the size of a grapefruit and was discolored on the left side. Stanley's wife attempted to telephone Fisher on Saturday, February 21; however, she was unable to reach him. Fisher's office was contacted by telephone on Monday, February 23, and Stanley was told to expect some swelling. The next day Stanley saw Fisher at his office, and by this time Stanley's scrotum was swollen to the size of a cantaloupe or three to four times the normal size. Fisher told him to continue the use of ice. On the 25th, Fisher contacted Stanley to come in for an examination, which he did. Fisher informed Stanley that he had a hematoma on the left side, and he was to use heat on his scrotum. The next day when Stanley saw Fisher, Stanley was told to continue heat and some drugs were prescribed.

By March 1, the left hemi-scrotum was still swollen and discolored. Stanley, at his wife's insistence and with Fisher's agreement, was admitted to Reid Memorial Hospital in Richmond where he was seen by Fisher and Dr. Glen Ward Lee (Lee), a urologist, on the day of his admission. Fisher informed Stanley that the hematoma would heal on its own, and since Stanley was running a fever, antibiotics were administered to him. The day after his admission to the hospital Stanley's scrotal sac ruptured. This rupture was enlarged by Lee so that the old blood contained within Stanley's scrotal sac could drain. However, the swelling had not diminished significantly by March 5. Fisher then informed Stanley that Lee would lance his scrotum to drain all of the blood which was within it. However, on the same afternoon Lee informed Stanley that an orchiectomy would have to be performed, and this operation took place on March 9th. After the orchiectomy, Stanley's left testicle was sent to the hospital's laboratory for examination. The pathological report showed that there was a hematoma with an abscess as a result of an infection of enterococcus and E. coli bacteria. In addition, there was an area of hemorrhage found in the left testicle.

Stanley commenced this action against Fisher in the Wayne Circuit Court on September 9, 1976, alleging that Fisher's negligence in performing the vasectomy caused the removal of his left testicle. At the close of the evidence, Fisher made a motion for judgment on the evidence on the following issues: whether he negligently cut or severed a blood vessel or vein, whether he negligently failed to discover active bleed-

ing at the time of completion of the operation, and whether he timely failed to refer or consult with a medical specialist in the course of rendering treatment to Stanley. Fisher's motion was granted. The only issue submitted to the jury was whether Fisher was negligent in his post-operative care of Stanley. The jury returned a verdict for Fisher, and the court entered judgment thereon.

## ISSUES

Stanley has raised the following issues for our consideration:[1]

1. Whether the trial court erroneously failed to apply the doctrine of *res ipsa loquitur*.

2. Whether the trial court erroneously granted Fisher's motion for judgment on the evidence on the issues of:

    (a) whether Fisher negligently severed or nicked a blood vessel during the vasectomy.

    (b) whether Fisher negligently failed to discover and stop active bleeding which existed at the time of the completion of the vasectomy.

3. Whether the trial court committed reversible error in unduly restricting Stanley's cross-examination of Fisher.

## DECISION

Because of our decision to reverse, we will discuss only issues one and two.

*Issue One*

Stanley contends the trial court erroneously failed to apply the doctrine of *res ipsa loquitur* when ruling on Fisher's motion for judgment on the evidence. He states that the loss of a testicle does not normally result from a properly performed vasectomy. Since Stanley was under Fisher's care and exclusive control, he contends *res ipsa loquitur* applies to this case. Fisher, on the other hand, alleges that *res ipsa loquitur* does not apply because post-operative bleeding, which caused the hematoma, can occur following a perfectly performed surgical

procedure. However, we need not address this issue, Fisher states, since Stanley failed to request a jury instruction defining the doctrine and failed to include this issue within his motion to correct errors. Therefore, Fisher contends, Stanley has waived this error, if any exists. Stanley argues that the issue of *res ipsa loquitur* is not waived since it does not require a separate assignment within his motion to correct errors. The applicability of the doctrine, he states, is "inherent" in the questions presented as to the rulings of the trial court removing two issues from the consideration of the jury. We disagree.

■ Stanley has overlooked the language contained within Ind.Rules of Procedure, Trial Rule 59(D)(2) which provides:

"(2) Content of Motion. In all cases in which a motion to correct error is made, such motion shall separately state the error or errors which are claimed. The error claimed is not required to be stated under, or in the language of the bases for the motion allowed by this rule, by statute, or by other law. Each claimed error shall be stated in *specific rather than general terms*, and *shall be accompanied by a statement of the facts and grounds upon which the errors are based*." (Emphasis added.)

This requirement of specificity in the motion to correct errors must be followed by appellants for as Judge Buchanan stated in *Bennett v. State*, (1973), 159 Ind.App. 59, 62, 304 N.E.2d 827, 829:

"While the motion to correct errors serves as the complaint on appeal, its primary purpose is to afford the trial court the opportunity to rectify errors it has committed. Without being informed by a specific statement of the facts and grounds on which the claimed error is based, the trial judge cannot rectify his errors, if any. Were it otherwise, an appellant could propel himself into this or the Supreme Court by general statements of claimed errors, detailed at leisure after his motion to correct errors is overruled. Such a gigantic bootstrap by an appellant

---

1. We have restated and renumbered the issues in order to address them more efficiently.

is precisely what the rules of appellate procedure are designed to avoid." (Citations omitted.)

We find no merit in Stanley's contention that since the facts in this case require the application of the *res ipsa loquitur* doctrine an averment that the court erroneously sustained Fisher's motion for judgment on the evidence brings the issue before this court. Trial Rule 59 requires facts and grounds upon which errors are based. A general averment that the court's decision was erroneous points out nothing to the trial court. The error could be as a result of the nonapplication of *res ipsa loquitur* or the misapplication of the legal standard for a judgment on the evidence. The trial court must be specifically apprised of its errors. Since Stanley failed to include in his motion to correct errors the issue of the application of *res ipsa loquitur*, it is waived. *Hogan Transfer & Storage Corp. v. Waymire*, (1980) Ind.App., 399 N.E.2d 779, *trans. den.*

■ Even if the issue of the application of *res ipsa loquitur* had not been waived by Stanley, the doctrine is not applicable in this case. *Res ipsa loquitur* has been defined as follows:

> "Briefly and perhaps oversimply stated res ipsa loquitur is a rule that provides that a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that *normally would not have occurred in the absence of the defendant's negligence*." (Emphasis added.)

McCormick, Evidence, § 342 at 804 (2d ed. 1972). This doctrine has been invoked in medical malpractice cases in Indiana. *See Carpenter v. Campbell*, (1971) 149 Ind.App. 189, 271 N.E.2d 163, and cases cited therein. However, its application has been limited in certain circumstances.

> "The testimony of record clearly indicates that the complications aforementioned could have existed without negligence on the part of the defendants or any of them. The doctrine of res ipsa loquitur is here inapplicable as in *Prest-O-Lite Co. v. Skeel*, (1914) 182 Ind. 593,

599, 106 N.E. 365, 368, wherein the court refused to apply the doctrine '[w]here the injury might well have resulted from any one of many causes * * *'. *See also Wallstedt v. Swedish Hospital*, (1945) 220 Minn. 274, 19 N.W.2d 426. Under such circumstances the doctrine should not be applied even if the injury alleged is a rarity in such situations or is an unnatural reaction to the medical treatment given. *Burnside v. Evangelical Deaconess Hospital*, (1970) 46 Wis.2d 519, 175 N.W.2d 230, and *Buchanan v. Downing*, (1964) 74 N.M. 423, 394 P.2d 269."

*Id.* at 196, 271 N.E.2d at 167–68. Stanley has attempted to distinguish *Carpenter* from the present case upon the basis that the exculpatory expert testimony in *Carpenter* was more definite than that contained in the present record. This differentiation is inadequate to forestall the application of this court's analysis in *Carpenter* to the present case. The removal of Stanley's left testicle was necessary as a result of the hematoma and abscess. These conditions, according to the expert testimony, occurred as a result of a hemorrhage and an infection. However, the expert testimony is quite clear that a hemorrhage can occur even after a properly performed operation. Dr. Stepleton, Stanley's expert witness, testified in substance that presuming the vasectomy has done in a perfect style, the same consequences could have followed because a hemorrhage can always occur after an operation. To the same effect, Dr. Adney and Dr. Hinshaw testified that the hematoma and infection could result without negligence on the part of the physician who performed the vasectomy. Contrary to Stanley's contention, this record clearly indicates that the complications which occurred could have existed without any negligence on the part of the operating physician. Therefore, the doctrine of *res ipsa loquitur* is inapplicable to this case.

### Issue Two

At the close of all the evidence, Fisher moved for judgment on the evidence, pursuant to Ind. Rules of Procedure, Trial Rule

50,[2] on the issues of whether he negligently cut or nicked a blood vessel or vein during the surgery and whether he failed to stop active bleeding which he observed or should have observed. The trial court sustained Fisher's motion upon the basis that the evidence was not sufficient for the trier of fact to determine these issues. Stanley contends this ruling was erroneous because there was evidence that Fisher had nicked or severed a blood vessel while performing the vasectomy and that the hemorrhage had existed from the time of the vasectomy. Fisher's contentions are twofold. He alleges that Stanley failed to introduce any evidence that to nick or sever a blood vessel is below standard practice. He also states there is no evidence of probative value that Fisher nicked or severed a blood vessel or closed the surgical incision in the face of bleeding that was visible or should have been visible. Therefore, he argues, the court properly granted his motion for judgment on the evidence.

A motion for judgment on the evidence will be sustained "only if one or more of the material allegations of the complaint essential to recovery are not supported by evidence of probative value or by any reasonable inference that may be drawn therefrom." *Bradford v. Chism*, (1963) 134 Ind. App. 501, 505, 186 N.E.2d 432, 434, *trans. den.* When a party appeals the granting of a motion for judgment on the evidence, we will consider only the evidence most favorable to that party and all reasonable inferences to be drawn therefrom. *Mamula v. Ford Motor Co.*, (1971) 150 Ind.App. 179, 275 N.E.2d 849, *trans. den.* (1973). The standard to be applied to a motion for judgment on the evidence was recently discussed by this court in *Cummings v. Hoosier Marine Properties, Inc.*, (1977) 173 Ind.App. 372, 378, 363 N.E.2d 1266, 1271, *trans. den.* (1978), where Judge Hoffman stated:

"The amount of evidence required of the plaintiff to avoid a judgment on the evidence has been determined by our Supreme Court in *Hendrix v. Harbelis* (1967), 248 Ind. 619, 230 N.E.2d 315, under the prior rule. At 623 of 248 Ind., at 318 of 230 N.E.2d, the court held:

'It is only where there is a total absence of evidence or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant, that the court may give a peremptory instruction, as the defendant-appellant herein requested.'

"This standard was carried forward under the present Trial Rule 50, *supra*, in *Mamula v. Ford Motor Co.* (1971), at 182 of 150 Ind.App. 179, at 851–52 of 275 N.E.2d 849 (transfer denied), where it is stated:

'The rule is often stated to be that in a jury trial a court should not direct a verdict for a defendant at the close of a plaintiff's evidence unless there is a total absence of evidence or reasonable inference on at least one essential element of a plaintiff's case.

(Citations omitted.)

'When passing on a motion for a directed verdict, the court is merely called on to determine if there is *some* evidence of negligence on the part of the defendant which the jury is entitled to consider. *Jones v. Furlong* (1951), 121 Ind.App., 279, 97 N.E.2d 369. *Where the evidence is such that the minds of reasonable men might differ*, or if the determination of negligence depends on conflicting evidence, then the question is for the jury.'"

Therefore if there is any evidence or legitimate inferences in favor of Stanley which the jury is entitled to consider, the granting of the motion for judgment on the evidence was error.

---

2. Trial Rule 50 provides in pertinent part:

"(A) Judgment on the evidence—How raised—Effect. Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict."

Before a negligence case can be submitted to the jury, there are certain questions of law which must be decided by the trial court. These questions of law were delineated by our Supreme Court in *Miller v. Griesel*, (1974) 261 Ind. 604, 611–12, 308 N.E.2d 701, 706–07:

"The first is whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff.

'The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty.' *Neal v. Home Builders, supra.* [(1953), 232 Ind. 160, 111 N.E.2d 280]. . . .

"The second question of law concerns what standard of care will the courts impose on this relationship once a duty is recognized. The traditional standard to be applied is whether the defendants exercised their duty with the level of care that an ordinary prudent person would under the circumstances. *Pierce v. Horvath* (1968), 142 Ind.App. 278, 233 N.E.2d 811. . . .

"The third question of law for the court here is one which courts must pass upon in every civil case; that is whether the evidence introduced by the plaintiff at trial is sufficient as a matter of law to enable the jury to find that the plaintiff has established the elements of the cause of action; in this case the elements of negligence outlined above."

■ It has long been recognized in Indiana that a physician owes a duty to his or her patient. In absence of a special agreement, the law will imply a contract by the physician that he possesses the reasonable and ordinary qualifications of his profession and that he will exercise at least reasonable skill, diligence, and care. However, a promise to effect a cure will not be implied. *Adkins v. Ropp*, (1938) 105 Ind.App. 331, 14 N.E.2d 727; *Adolay v. Miller*, (1916) 60 Ind. App. 656, 111 N.E. 313. Since Fisher clear-

ly owed a duty to Stanley, the controversy in the present case centers around the second and third questions of law to be determined by the trial court which were set out in *Miller, supra.*

■ The standard to which Fisher is held is that reasonable care and diligence ordinarily exercised by members of the profession in similar cases under like conditions in the locality in which he practices. *Bassett v. Glock*, (1977) Ind.App., 368 N.E.2d 18; *Thomas v. Dabblemont*, (1903) 31 Ind. App. 146, 67 N.E. 463. The existence and scope of this standard must be proved by expert testimony. *Bassett, supra.* Fisher contends Stanley failed to introduce any evidence that for a physician to nick or cut a vein or an artery during a vasectomy is substandard. We agree. The record is barren of evidence that for a physician to cut or nick a vein during a vasectomy is below the standard of care. Therefore this issue was properly taken from the jury.

■ The second issue which was not submitted to the jury was whether Fisher nicked or severed a blood vessel or vein during surgery and then closed the surgical site in the face of bleeding. Both parties concede that for a physician to do so would be substandard conduct. Stanley contends there is evidence in the record of negligence on the part of Fisher concerning this issue. He cites to us the testimony of Lee that the cause of the abscess which led to the orchiectomy was a hemorrhage and infection. The bleeding in the scrotum, Lee stated, probably had continued from the time of the vasectomy since there was a lot of drainage from the scrotum. Further, he denied that the bleeding could have come from any place other than a severed or nicked vein or artery. In addition to Lee's testimony, Dr. Stepleton testified that it is possible that there could be bleeding which was not discernible to the surgeon, but it was not likely. Dr. Adney, a urologist, admitted that if the bleeding had continued from the time of the vasectomy, then the physician failed to find a bleeder. From this testimony, one could infer that Fisher nicked or cut a vein or an artery during the

vasectomy and failed to ligate it before closing the surgical incision.

Fisher, however, contends that Lee's testimony is merely inferential evidence which when *reasonably construed* is consistent with Fisher's testimony that there was no bleeding, other than that which was superficial, on the left side. The reasonable construction which Fisher urges upon us is that Lee could not say with a degree of certainty on March 9th that there was a hemorrhage at the time of closure of the incision. Thus, he states, Lee's testimony has no probative value. To foster this construction Fisher specifies the testimony of Drs. Adney and Stepleton that one could not have said on March 9th, with a degree of certainty, that the bleeding had continued since the vasectomy. He also cites to us *Palace Bar, Inc. v. Fearnot*, (1978) Ind., 381 N.E.2d 858, 864, where our Supreme Court stated: "A doctor's testimony can only be considered evidence when *he states* that the conclusion he gives is based on reasonable medical certainty that a fact is true or untrue. A doctor's testimony that a certain thing is *possible* is no evidence at all." (Emphasis added.)

We do not find Fisher's contention persuasive upon the basis of the expert witnesses' testimony or *Palace Bar, supra.* Lee did not state that it was "possible" that the bleeding had continued from the time of the vasectomy; he stated that it was probable. Furthermore, when asked whether the bleeding could have come from any place other than a nicked or severed artery or vein, Lee was unequivocal in his negative answer. The testimony of Drs. Adney and Stepleton, which Fisher recites, merely goes to the credibility of Lee's testimony. We refuse Fisher's invitation to construe the testimony of Lee by weighing its credibility since that is not our function on appeal. Neither is it the function of the trial court when considering a T.R. 50 motion. *Pearson v. First National Bank of Martinsville*, (1980) Ind.App., 408 N.E.2d 166, *trans. den.*

Finally, Fisher argues that a construction of Lee's testimony which would support the proposition that there was bleeding present at the time Fisher closed the incisions is manifestly unreasonable. Such a construction, he argues, would allow the jury to infer the existence of the facts which would themselves constitute negligence. This court stated in *Pardue v. Seven-Up Bottling Co. of Indiana*, (1980) Ind.App., 407 N.E.2d 1154, 1159, cited to us by Fisher, that: "A jury can infer negligence from the facts proved, but it cannot infer the existence of the facts which would constitute negligence. *Vandalia Railroad Company v. McMains*, (1908) 42 Ind.App. 532, 85 N.E. 1038." A construction of Lee's testimony consistent with Stanley's allegation of negligence is not unreasonable. Nor does it allow the jury to infer the existence of facts which constitute negligence. Lee testified that bleeding, which continued from the time of the vasectomy, caused the hematoma and abscess, and that the bleeding could not have come from any place except a nicked or severed artery or vein. It is within the province of the jury to resolve the conflict between Lee's testimony and Fisher's testimony of whether there was a bleeding vein or artery which was not ligated during surgery. Therefore, the issue of whether Fisher negligently failed to discover bleeding at the time of closure of the incision should have been submitted to the jury.

Judgment reversed and remanded for a new trial.

NEAL, P.J., and ROBERTSON, J., concur.